BECKWITH HAVENS, Respondent, v. ROCHESTER ROPES, INC., Appellant.

Second Department, February 21, 1944.

*Hugh G. Bergen* for appellant.

*Neilson Olcott* and *John H. Jackson* for respondent.

CARSWELL, Acting P. J., JOHNSTON and LEWIS, JJ., concur; ADEL, J., concurs in the dismissal of the appeal from the order, but votes to reverse the judgment on the law and the facts, with costs, and to dismiss the complaint on the law, with costs, in an opinion in which ALDRICH, J., concurs.

ADEL, J. (dissenting in part). In 1940 the plaintiff entered defendant's employ under a written contract which, under certain circumstances, might have run until October, 1945. In June, 1942, he was called into active duty as a Lieutenant Commander in the United States Naval Reserve, where he continues to serve. In this action to recover damages for his alleged wrongful discharge he has recovered a substantial verdict, and from the judgment entered thereon and the order denying a motion to set aside the verdict and for a new trial, the defendant appeals. The main question on this appeal is whether or not the contract obligations and benefits terminated, either in law or in fact, upon plaintiff's entry into active naval service.

Plaintiff was employed by the defendant to call upon aircraft manufacturers, with a view to establishing and furthering the sale of one of defendant's products known as airplane cable. His duties required him to call in person upon such manufacturers, and to keep in touch with them by telephone, correspondence and other communications. He discharged such duties; the results of his efforts were successful; the earned commissions were paid to him. The writings upon which the claimed unlawful discharge is based may be summarized as follows: In June, 1942, plaintiff informed his employer that he had entered active naval service, and expressed the opinion that his change in status would not prevent his continuing to fulfill his obligations under the contract and to receive the compensation earned. The defendant took the position that it would be unlawful to continue plaintiff in its employ and to compensate him with commissions on future sales; and further, that plaintiff could not, because of his full time naval service, discharge the duties contemplated by the contract. Defendant stated that in no event should plaintiff continue to represent it as long as he continued in naval service. The plaintiff replied that he was in control of sufficient spare time from his naval duties to continue performance of the contract; and that in his opinion there was no illegality in such performance nor in his receiving compensation therefor. The defendant then stated that it would be happy to continue plaintiff's employment, despite his naval service, if he would demonstrate that he had the time to devote to the contract obligations, and more particularly if he would procure a letter from the Navy Department showing his authority to continue in the defendant's employ. The plaintiff declined to procure such authorization. He considered defendant's communications a discharge, and brought this action.

It could be found that under the contract plaintiff was not required to give his whole time to defendant's business; that prior to his active naval service he did not devote his whole time thereto; and that such a situation was contemplated by the parties and satisfactory to them. Plaintiff testified that in his present service he is entitled to one day off in eight; that in addition, when he stands watch at night, he has all of the following day off. He claims that in such intervals he could have discharged his obligations under the contract if he had not been wrongfully prevented by defendant. On the other hand he admitted, as he must under plain interpretation of the contract, that he was required not only to make original contacts with aircraft manufacturers but to continue such calls as indicated, and that the contract provided for and contemplated personal service. He conceded that although he has been stationed by the Navy at a point not far distant from the defendant's office, he is, nevertheless, subject to transfer to any other part of the world; that he may not travel more than twenty-five miles from his station without the consent of a superior officer; and that he must wear his naval officer's uniform in public at all times.

The jury found a verdict for plaintiff, and thereby implied that despite his naval service he was able to continue to represent the defendant as required by the contract. I think the finding is contrary to the evidence and the weight of the evidence; but the disposition of this appeal does not rest on that ground. The contract became, in law, impossible of performance by plaintiff. His obligations required him to make personal calls on manufacturers within the territory lying, roughly, east of the Mississippi River. Because of his obligations to the Navy it is impossible for him to fulfill this obligation. It is true that it does not appear that after June, 1942, any specific occasion arose requiring him to travel on the defendant's behalf to a point more than twenty-five miles from his naval station. The necessity, however, for showing any such requirement was eliminated by plaintiff's theory that he was wrongfully discharged in June. The concession that plaintiff would require a superior officer's permission for an extended trip indicated that by his naval service a situation came about whereunder plaintiff's ability to perform was made conditional; and the condition was never assented to by defendant. On any specific occasion defendant should not be required to await the pleasure of a superior naval officer to determine whether or not its employee may travel in furtherance of defendant's busi-

ness. Impossibility of performance, as viewed in law, does not mean absolute impossibility, but refers to a situation in which performance is impracticable without undue disturbance of normal operations of trade or commerce. (Restatement, Contracts, § 454.) When the availability of the service of its employee was made to depend upon the consent of a third party the defendant was not only confronted with a condition which it had never accepted but with a situation which entitled it to believe that reasonable performance by its employee had become impossible. There are additional factual elements which are more or less persuasive to the conclusion that performance became impossible. For instance, the defendant should not be required to accept a representative who would make calls for the solicitation of business and the adjustment of complaints when clothed in a naval officer's uniform; and it should be entitled to reasonable assurance that its employee is nearby for defendant's purposes, whereas it might easily come about that he has departed, without notice, to a remote part of the world.

The defendant furnishes materials by sale to the United States Government, and indeed to the United States Navy; although it may be noted that it is not claimed that plaintiff was employed for nor did he actually develop sales to those purchasers. There is a Federal statute which, as amended, reads as follows (U. S. Code, tit. 34, § 883; 29 U. S. Stat. 361; 49 U. S. Stat. 490): "After July 22, 1935, no payment shall be made from appropriations made by Congress to any officer in the Navy or Marine Corps on the active list while such officer is employed, after June 30, 1897, by any person or company furnishing naval supplies or war materials to the Government, and such employment is hereby made unlawful after said date: *Provided*, That no payment shall be made from appropriations made by Congress to any retired officer in the Navy or Marine Corps who for himself or for others is engaged in the selling of, contracting for the sale of, or negotiating for the sale of, to the Navy or the Navy Department, any naval supplies or war material."

The statute expressly forbids either employment of or payments to plaintiff by defendant under the facts of this case. On a motion for summary judgment in this action it was held (179 Misc. 889) that the provisions of the above statute have been repealed or at least suspended *pro tem* because of certain provisions in the Selective Training and Service Act of 1940 (U. S. Code, tit. 50, Appendix, § 303, subd. [f]; 54 U. S. Stat. 885, 887) reading as follows:

" Nothing contained in this or any other Act shall be construed as forbidding the payment of compensation by any person, firm, or corporation to persons inducted into the land or naval forces of the United States for training and service under this Act, or to members of the reserve components of such forces now or hereafter on any type of active duty, who, prior to their induction or commencement of active duty, were receiving compensation from such person, firm or corporation." Reference might also be made to subdivision (a) of section 316 of the Appendix to the same Code title, as follows: " Except as provided in this Act, all laws and parts of laws in conflict with the provisions of this Act are hereby suspended to the extent of such conflict for the period in which this Act shall be in force."

These Selective Training and Service Act provisions seem to permit, for the time being, payments to naval personnel that are prohibited by the earlier statute. However, they do not authorize private employment, and the prohibition against it still stands. In other words, the Selective Service provisions contemplate voluntary payments by an employer to his employee while he is in the armed forces, or even payments in the nature of royalties or the like; and to those extents the statutory bar is suspended. But the provisions do not authorize active private employment and compensation therefor while the employee is in the armed services. The order which denied defendant's motion for summary judgment on these grounds was affirmed by this court without opinion (266 App. Div. 672). Under familiar rules that amounted to a holding that triable issues existed, and did not mean that all the statements in the Special Term justice's opinion were adopted. (*Estate Property Corp.* v. *Hudson Coal Co.*, 259 App. Div. 546, 549; *Comr. of Welfare of City of N. Y.* v. *Jackson*, 265 N. Y. 440.)

For these reasons the judgment in favor of the plaintiff should be reversed on the law and the facts, with costs, and the complaint should be dismissed on the law, with costs. The appeal from the order denying a new trial should be dismissed, without costs.