[L. A. No. 19381. In Bank. May 23, 1947.]

GENE AUTRY, Appellant, v. REPUBLIC PRODUCTIONS, INC. (a Corporation), Respondent.

Gang, Kopp & Tyre, Samuel Williston and Martin Gang for Appellant.

Finlayson, Bennett & Morrow, Loeb & Loeb, Hubert T. Morrow, Milton H. Schwartz, John C. Morrow and Herman F. Selvin for Respondent.

SHENK, J.—This is an appeal by the plaintiff from a judgment declaring the rights and obligations of the parties under contracts between them and in effect at the time of the plaintiff's enlistment in the United States Army in 1942.

Prior to his enlistment the plaintiff, Gene Autry, was a motion picture actor dramatizing western or cowboy roles. The defendant, Republic Productions, Inc., was a producer of western photoplays.

On September 22, 1938, the parties entered into a written agreement by which the defendant engaged the plaintiff's services as an actor in ten photoplays during one year commencing July 1, 1938, the plaintiff to receive $6,000 for each of the first two, and $10,000 for each of the remaining eight. By paragraph 20 of the agreement four options were granted to the defendant, each of which, if exercised, would successively extend the contract for a year. Eight photoplays were to be produced each year. An annual increase of $1,000 per picture was also provided. Thus, in the year covered by the fourth option, the plaintiff's compensation for each photoplay would become $14,000.

In due time and prior to March 7, 1942, the defendant exercised the first three options which by written agreements

brought the period for the expiration of employment under the third to March 6, 1943. On April 20, 1942, the plaintiff was ordered to report for physical examination under the Selective Service Act, and was placed in Class 1-A. On May 11, 1942, the parties executed a further written agreement by which the defendant was granted an additional option for one year commencing upon the expiration of the last option of the 1938 agreement and during which eight plays were to be photographed for a compensation of $15,000 each. Included in that agreement was a paragraph numbered 24, providing: "In the event that the Artist [plaintiff] shall be required to serve in the armed forces of the United States pursuant to the Selective Service Act, or shall volunteer for such service, the parties hereto will agree upon their mutual rights and obligations hereunder in view of such military service."

The plaintiff enlisted in the Army on July 26, 1942. At that time there remained five plays to be photographed under the third option. The plaintiff rendered no service to the defendant after his enlistment.

Within the specified times the defendant exercised the fourth option of the 1938 agreement and the additional option of the 1942 agreement, which if not further extended would have brought the termination date of the employment to March 6, 1945. On March 3, 1944, the defendant notified the plaintiff that it elected to extend performance under the fourth option of the 1938 agreement for a period equal to that of the plaintiff's military service.

On June 17, 1944, the plaintiff served on the defendant a notice of termination of the agreements and employment thereunder by reason of military service. On June 27, 1944, while still serving in the armed forces, he filed the present action for a declaration of the rights and duties of the parties under their agreements. The trial court's decision was rendered in February, 1945, although not entered until March 20, 1945. The plaintiff's discharge from military service took place in July, 1945.

The judgment declares that the contracts between the parties had not been terminated; that the plaintiff's military service suspended performance for a time equal to the period of military service; that after his discharge from the Army the plaintiff would be bound to carry out the unperformed portion of the contracted employment by appearing in five and eight photoplays under the third and fourth options

respectively of the 1938 agreement, and eight photoplays under the additional option of the 1942 agreement; and that no substantial burden would be placed upon the plaintiff by the completion of performance of the contracts following his discharge from military service. The court excluded from the force of the judgment the plaintiff's rights or privileges pursuant to section 2855 of the Labor Code limiting a contract of employment to a period of seven years. Also excluded from consideration herein is the possible obligation on the part of the defendant to reemploy the plaintiff as. an exserviceman (Act of September 16, 1940, ch. 720, § 8, 54 Stats. 890, as amended, 50 U.S.C.A. (Appendix) § 308).

The controversy presents the question of the effect of the plaintiff's military service on the rights of the parties under the .contracts and their conduct thereunder.

The plaintiff places reliance in part on the doctrines of frustration and impossibility to sustain his contention that the court's conclusions and judgment are unsupported.

This court has recently considered the history and nature of the doctrine of frustration as an excuse for nonperformance. (*Lloyd* v. *Murphy,* 25 Cal.2d 48 [153 P.2d 47].) There it was pointed out (at p. 53) that although the doctrines of frustration and impossibility are akin, frustration is not a form of impossibility of performance. It more properly relates to the consideration for performance. Under it performance remains possible, but is excused whenever a fortuitous event supervenes to cause a failure of the consideration or a practically total destruction of the expected value of the performance. (See, also, *20th Century Lites, Inc.,* v. *Goodman,* 64 Cal.App.2d Supp. 938 [149 P.2d 88]; Restatement of Contracts, § 288, discussion and cases cited.) As stated in *Lloyd* v. *Murphy* (at p. 54) the purpose of contracts is to place the risks of performance upon the promisor. Without extended discussion, the foregoing authorities demonstrate that, strictly speaking, there is here not a failure of the consideration or the destruction of the value of performance in the sense contemplated by the doctrine of frustration. ■ Furthermore, if the parties have contracted with reference to a state of war or have contemplated the risks arising from it they may not invoke the doctrine of frustration. (*Lloyd* v. *Murphy, supra,* 25 Cal.2d at page 55 and cases cited.)

"Impossibility" is defined in section 454 of the Restatement of Contracts, as not only strict impossibility but as

impracticability because of extreme and unreasonable difficulty, expense, injury, or loss involved. Temporary impossibility of the character which, if it should become permanent, would discharge a promisor's entire contractual duty, operates as a permanent discharge if performance after the impossibility ceases would impose a substantially greater burden upon the promisor; otherwise the duty is suspended while the impossibility exists. (Restatement of Contracts, § 462.) The trial court's judgment indicates that the controversy was resolved upon the theory of temporary impossibility and suspension due to military service.

At the time of the 1938 agreement the contingency of the entry of the United States into the second World War was not expressly contemplated by the parties. Looking at that agreement alone, the war and the plaintiff's military service were supervening fortuitous events which rendered performance impossible. Had the parties not entered into further agreement, and in the absence of a validly exercised extension of the 1938 agreement, the controversy between them might properly be resolved solely by a determination of the question of impossibility. In *Havens* v. *Rochester Ropes, Inc.,* 267 App.Div. 394 [46 N.Y.S.2d 534]; and *Marshall* v. *Glanvill* [1917], 2 K.B. 87 (see, also, *Dacey* v. *Trust Funds, Inc.,* 66 F.Supp. 321, 322), it was indicated that entry into military service effected permanent discharge of an employment contract. The defendant cites no authority holding that military service results in a temporary impossibility. However, in view of our conclusions herein, it becomes unnecessary to treat more specifically the question whether the plaintiff's mere entry into military service resulted in a permanent discharge of the 1938 agreement.

The defendant contends that the notice of March 3, 1944, was in the exercise of certain privileges granted in the event of the plaintiff's failure to perform, and operated to extend the 1938 contract.

Paragraph 12 of that agreement provided that if the production of any photoplay in which the plaintiff was appearing or was scheduled to appear was necessarily prevented, suspended or postponed during the employment period by reason of fire, labor conditions, riot, war, act of God, or by the enactment of any law, municipal, state or federal, or other specified contingencies, the producer had the option to suspend the agreement during the continuance of such prevention,

suspension or postponement without obligation to pay compensation during the period of suspension; but that if the period of suspension continued for four weeks, the plaintiff at his option might terminate the contract; or thereupon the producer might keep the agreement in force by electing to pay the plaintiff weekly at a rate specified.

Since there was no pretense of compliance with the terms of that paragraph, the defendant does not contend that the election to extend the period of performance was exercised pursuant to that provision.

Paragraph 13 of the contract gave the defendant the right to suspend the contract, without payment of compensation during the suspension, if the plaintiff by reason of mental or physical disability or otherwise should be incapacitated from fully performing, or in the event he suffer facial or physical disfigurement, or material alteration or change in his facial or physical appearance, or any impairment of his voice, materially detracting from his appearance on the screen or interfering with his ability to perform.

. This paragraph clearly relates to illness resulting in physical or mental disability to perform as an actor under the agreement, including any physical suffering or impairment which, although there be capacity to perform, might reduce the value of the performance. The words, "disability" and "incapacitated," are determinative. Inability, such as that due to military service, was not included within the subject matter of that provision. There is no contention that the plaintiff suffered any of the disability or incapacity which was contemplated by paragraph 13.

Paragraph 14 stated the foundation for injunctive relief in the event of a breach of contract by the plaintiff, that is, in the event of the failure, refusal or neglect of the artist to perform or observe any of his obligations to the full limit of his ability or as instructed; or the defendant could terminate the agreement or the employment period, or extend the term of the agreement and all of its provisions for a period equivalent to the time during which such failure, refusal or neglect continued.

The right to injunctive relief in such event characterizes the failure, refusal or neglect encompassed within that paragraph as a voluntary failure, refusal or neglect on the part of the plaintiff, when otherwise he was in a position to perform services under his employment. It is no answer to say

that the plaintiff enlisted, and that since his entry into the military service was in a sense voluntary, his ''failure'' likewise was voluntary. His enlistment when his country was engaged in war may not be declared to be the voluntary failure, refusal or neglect to perform intended by the provisions of paragraph 14. The fact is that the 1938 agreement did not deal with the contingency of the plaintiff's military service. Moreover, if paragraph 12 was intended to cover that contingency, then the defendant expressly refrained from proceeding thereunder, and the plaintiff's notice was an exercise of his right pursuant thereto.

Furthermore, if it is reasonable to conclude, as is indicated below, that the 1942 agreement was amendatory of and supplementary of the 1938 agreement, it may be said that paragraph 24 of the later agreement controlled the question of the defendant's rights in the event of the plaintiff's military service. That paragraph, being a specific provision governing the parties' rights on the happening of that contingency, is controlling over any general provision from which the defendant might have inferred some inconsistent right or privilege. (*Scudder* v. *Perce,* 159 Cal. 429, 433 [114 P. 571] ; Restatement of Contracts, § 236(c).)

The agreement of May 11, 1942, was a formal agreement with the same standard or general provisions as the 1938 agreement. By the later agreement the defendant was granted an additional option to be exercised by notice to the plaintiff thirty days prior to the expiration of the term of the last option of the earlier agreement. The later agreement contained the special provision (par. 24) that, in the event of military service by the plaintiff, the parties ''will agree upon their mutual rights and obligations hereunder in view of such military service.''

It is the plaintiff's position that upon the happening of the contingency dealt with in paragraph 24, and in the absence of a new agreement concerning the parties' mutual rights and obligations, their relationship terminated. The defendant contends that the provision of that paragraph is meaningless and of no effect.

There is no dispute that neither law nor equity provides a remedy for breach of an agreement to agree in the future. Such a contract cannot be made the basis of a cause of action. (*Klein* v. *Markarian,* 175 Cal. 37 [165 P. 3] ; *Los Angeles Immigration & Land Co-operative Assn.* v. *Phillips,*

56 Cal. 539; *Dillingham* v. *Dahlgren*, 52 Cal.App. 322 [198 P. 832] and cases cited.) The court may not imply what the parties will agree upon. (*Kerr Glass Mfg. Corp.* v. *Elizabeth Arden Sales Corp.*, 61 Cal.App.2d 55 [141 P.2d 938].)

But it does not follow that the provision of paragraph 24 has no meaning, nor any effect upon the parties' mutual rights and obligations. That provision is not a naked agreement to agree. Being part of an undisputed contract between the parties, it must be given the meaning and effect which the written words and the conduct of the parties plainly indicate.

Prior to the execution of the 1942 agreement the parties conferred concerning their mutual rights and obligations in the event that the plaintiff entered the armed forces. At that time the plaintiff requested the inclusion of a clause that, in such event, the agreements and the employment contemplated thereby should terminate. The defendant rejected the proposal, and the provision which was included as paragraph 24 was accepted as a compromise, namely, that in the event the plaintiff entered military service the parties would leave for future agreement their mutual rights and obligations "in view of such military service." That the provision had meaning is disclosed by the conduct of the parties thereunder. Conferences were conducted in Chicago, and some preparations were undertaken looking toward photographing three plays after the plaintiff's entry into the armed forces. There is evidence that permission of the Army was obtained, although the compensation was required to go into the Army Relief Fund. The defendant offered to remunerate the plaintiff's wife for rental of horses and equipment, but the final outcome was a failure to agree and the pictures were not made. Subsequently there were unsuccessful attempts to negotiate a new contract between the parties to replace the outstanding agreements in the event of the plaintiff's discharge from the service. These attempts persisted until the filing of the present action.

It may be that the parties intended their agreements to remain in force during the period of military service. The language of paragraph 24 so indicates. Their conduct substantiates that mutual understanding. For instance, the request for a termination clause in the event of military service was based on the opinion of the plaintiff's attorney that military service would terminate the existing contract in

any event. The compromise was reached in order "to leave the question open." The parties apparently intended paragraph 24 to bear upon their mutual rights and obligations under the 1938 contract as well. In fact their attempt to agree on the photographing of three plays during military service was concerned with three of the photoplays under the 1938 contract. The trial court found that by reason of their acts and conduct both the plaintiff and the defendant recognized and acquiesced in the continuance of their contracts after the plaintiff's entry in the armed service, and at all times treated the contracts as valid, binding and subsisting. The findings in this respect, viewed in relation to paragraph 24 and the parties' conduct, are consistent with conclusions that the 1942 agreement was amendatory of the earlier agreement; that the agreements were in force (that is, not suspended) during military service; that the term of each option period expired or would expire in accordance with the express provisions; therefore, that the period of performance terminated on March 6, 1945. Such conclusions would be harmonious with the rule that where the parties have foreseen the happening of a possible future contingency and have expressly contracted with regard to it, the subsequent event is not fortuitous within the meaning of the rule. (Civ. Code, § 1511, subd. 2.) Here the parties expressly contracted with regard to the event of the plaintiff's military service. They did not thereby contemplate a postponement of performance. It was a special agreement that their mutual obligations should continue during the period of military service, but that they would make a new agreement concerning their rights and obligations. It does not follow from their failure to agree that there was no performance in legal contemplation.

However, assuming, as the trial court concluded, that the plaintiff's military service constituted a temporary impossibility of performance, then it becomes necessary to determine the effect of paragraph 24 upon the rights and obligations of the parties following the plaintiff's discharge from military service. In this connection likewise the special provision must be given the force and effect intended, that is, as an abrogation of existing terms and a substitution of terms to be agreed upon in the event of military service; and any ineffectiveness inherent within it pertains only to the matter of its enforcement. The parties are not deprived of

reliance thereon in the event of the happening of the contingency with which it expressly deals. On the contrary the special provision then becomes effective as a modification of their agreements. The mere failure to come to agreement did not operate to restore or revive the original terms which were abrogated.

It is clear that it was the intention of the parties to reopen negotiations and agree concerning their future rights and obligations in the event of the plaintiff's military service. That they so understood the effect of paragraph 24 upon their entire agreement is abundantly shown from the record of their conduct, including their attempts following the plaintiff's entry into military service to negotiate a contract which would be effective upon his discharge from military service. Implicit in their contracts was the mutual recognition that the plaintiff's artistic career and the quality of artistic performance might be affected by the passage of time. Their contracts stipulated the special, unique, unusual, extraordinary and intellectual nature and the special and peculiar value of the services to be performed by the plaintiff. The record shows that they were aware of the plaintiff's peak of popularity as a cinema actor; that his continued success and popular following depended on his special ability to enact cowboy roles; that the physical activity and agility required in the success of such roles indicated a limited period when the plaintiff might be at the peak of his performance; and that the loss of several years in military service might well affect the parties' mutual rights and obligations. ■ These considerations, together with the great decrease in the purchasing power of the dollar, of which the court may take notice (*Butler* v. *Allen,* 73 Cal.App.2d 866, 870 [167 P.2d 488]), and which had already commenced at the time of the 1942 agreement, would have a direct bearing on whether in their own opinion the parties should continue under the existing contracts or whether the contemplated services should be performed on different terms to be agreed upon.

The executed agreements afforded to the defendant the protection of annual options. The defendant might elect not to exercise any one or more of them in the event that the plaintiff's popularity waned or other adverse conditions developed. ■ Provision 24, on the other hand, was intended to afford protection to both parties in the event of changes ensuing upon military service which might bear upon their mutual

rights and obligations. The parties thereby consented that neither should be obliged to continue under a contract which might become inequitable. What specific changes were relevant or might create inequalities, it becomes unnecessary to determine. The parties took those factors into consideration and expressly undertook to agree thereon between themselves. They have written their contract. The courts will not rewrite it for them. (*Foley* v. *Euless,* 214 Cal. 506 [6 P.2d 956].)

. In *Los Angeles Soda Works* v. *Southern California Aquazone Co.,* 103 Cal.App. 105 [284 P. 253], relief was denied where a contract similarly provided that the parties would agree in the future concerning terms for continuing an existing relationship, and no new agreement had been reached. The effect of the provision of paragraph 24 and the failure of the parties to agree thereunder, is that the plaintiff's performance was terminated at least as of the contractual expiration date of March 6, 1945. The court's findings and conclusions therefore indicate a failure to give recognition to the agreement and understanding expressed in paragraph 24.

Again assuming, however, as the trial court determined, that the original contract terms were merely suspended, the question is whether the record supports the finding and conclusion that delayed performance would impose no substantially greater burden upon the plaintiff. It has been said that the doctrine of revival of contracts suspended during the war is one based on considerations of equity and justice, and cannot be invoked to restore a contract which it would be unjust or inequitable to revive. (*New York Life Ins. Co.* v. *Statham,* 93 U.S. 24, 32 [23 L.Ed. 789].)

There should be no hesitancy in saying that equitable considerations should apply to the revival of personal service contracts interrupted by war, where not otherwise governed by statutory provisions. We have noted the factors which led the parties to undertake by the provision of paragraph 24 the determination of the equities for themselves. The considerations which brought them to that understanding cast considerable doubt upon the propriety of the trial court's declaratory judgment in that respect. Whether completion of performance after the plaintiff's discharge would place a substantially greater burden upon him cannot be resolved simply by the fact that his performance, the stipulated consideration therefor, and the time to be consumed

thereby would remain the same. The defendant contends that time was not the essence of the contracts nor a material element in the matter of performance. The trial court's conclusion indicates agreement with that contention. But the fact that the same time and effort may be required in making the pictures after release from military duty is not determinative. The court gave no consideration to the substantial period of time that would be taken out of the plaintiff's career by military service. By the option device the defendant was afforded protection against the encroachments of time upon expected profits or the plaintiff's ability and popularity. That protection could be invoked by electing not to exercise the options. Conversely, if time gave the defendant the advantage, profits could be preserved by electing to exercise the options. There was a time limit on the production of each series of plays. And as indicated, paragraph 24 also recognized time as an important factor. It is therefore apparent that the parties contemplated time as an essential element in their agreements. Within that contemplation and as a matter of general knowledge, time may place a severe and therefore very serious handicap on an artist who at the peak of performance and popularity must engage in military service for several years of the limited duration of his artistic career. And if an additional period must be spent in the delayed performance of a contract which otherwise would have terminated, the hardship is increased. A further inequity would be the compulsion to accept for the delayed performance a stipend greatly lessened in value by economic conditions. It may be said that the agreements placed upon the plaintiff the risk of such conditions for the duration of the agreed term. But he may not necessarily be deemed to have undertaken the risk for the longer term by which the contract is sought to be extended because of military service. He cannot be supposed to have consented to take during the postponed period remuneration at a rate much lower than that then prevailing for similar artistic services. Paragraph 24 also indicates the absence of such consent.

The element of time in relation to the special nature of the services to be performed by the plaintiff, and as affected by the economic changes consequent upon the war, should be deemed to have a bearing on the question whether delayed performance would impose a substantially greater burden upon the plaintiff. The probative facts were found

by the court; but the question whether those facts support its ultimate finding and conclusion that there would be no such burden is a question of law. (*Garrison* v. *Edward Brown & Sons*, 25 Cal.2d 473, 478 [154 P.2d 377].) Whether impossibility existed is also a question of law (*Mitchell* v. *Ceazan Tires, Ltd.*, 25 Cal.2d 45, 48 [153 P.2d 53]). The parties' contracts and their undisputed conduct, shown by the findings of the probative facts and otherwise by the record, indicates the substantial nature of the hardship in that respect. The trial court's conclusion that the plaintiff would suffer no substantially greater burden by delayed performance is therefore unsupported and in turn affords no support for the judgment.

From the foregoing it follows that the judgment should declare that in the absence of a new agreement to continue the relationship of the parties, there is no duty upon the plaintiff to perform services for the defendant after his discharge from military service.

The judgment is reversed.

Gibson, C. J., Carter, J., Traynor, J., and Schauer, J., concurred.