Filed 1/20/23

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SVAP III POWAY CROSSINGS, LLC, | D079903 |
| Plaintiff, Cross-defendant and Respondent, | |
| v. | (Super. Ct. No. 37-2020-00016039-CU-BC-CTL) |
| FITNESS INTERNATIONAL, LLC, | |
| Defendant, Cross-complainant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge. Affirmed.

Schwartz Semerdjian Cauley & Evans, Dick A. Semerdjian, John A. Schena; Klehr Harrison Harvey Branzburg and A. Grant Phelan for Defendant, Cross-complainant and Appellant.

Pryor Cashman, Benjamin S. Akley, Todd E. Soloway and Rachel E. Shaw for Plaintiff, Cross-defendant and Respondent.

Hodel Wilks, Fred L. Wilks for DDRM Hilltop Plaza L.P. as Amicus Curiae on behalf of Plaintiff, Cross-defendant, and Respondent.

Defendant and cross-complainant Fitness International, LLC (Fitness) appeals from a judgment entered in favor of plaintiff and cross-defendant

SVAP III Poway Crossings, LLC (SVAP) on SVAP's breach of contract claim for Fitness's non-payment of rent under the parties' lease.  Fitness contends that the trial court erred in granting summary judgment because its obligation to pay rent was excused due to the COVID-19 pandemic and resulting government orders prohibiting it from operating its fitness facility for several months.  Specifically, Fitness contends that the court should have found that the obligation to pay rent was excused based on:  (1) SVAP's own material breach of the lease; (2) the force majeure provision in the lease; (3) Civil Code section 1511;[1] (4) the doctrines of impossibility and impracticability; and (5) the doctrine of frustration of purpose.  We conclude that these contentions lack merit and affirm the judgment in favor of SVAP.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Lease for Premises at Poway Shopping Center*

SVAP is the owner and landlord of the building commonly known as the Poway Shopping Center.  Fitness is a California limited liability company renting certain space in the shopping center pursuant to a retail lease between the parties.  The lease is dated as of June 12, 2002, as amended, and provides Fitness the right to occupy the premises for a period of fifteen years, subject to three five-year renewals.  The parties later extended the initial term of the lease to October 31, 2025.

B. *COVID-19 Pandemic and Resulting Government Orders and Closures*

In March 2020, California Governor Gavin Newsom proclaimed a State of Emergency in California due to the threat of COVID-19.  Soon after, he issued an executive order placing limitations on residential and commercial evictions for non-payment of rent.  The order also stated, however, that it did not relieve a tenant of the obligation to pay rent, nor restrict a landlord's

---

[1]  All subsequent statutory references are to the Civil Code.

2

ability to recover rent due. Governor Newsom also issued an executive order directing all California residents to follow the State public health directive to stay home or at their place of residence, with certain exceptions, and directing all non-essential businesses to immediately cease operating to prevent further spread of COVID-19. Gyms and fitness centers were included in the category of non-essential businesses.

Because the government orders made it temporarily illegal for Fitness to operate its health club and fitness center at the premises, it ceased doing so in March 2020. Fitness was intermittently unable to operate its health club and fitness facility for certain periods from March 2020 through March 2021 due to government closure orders.

C. *Complaint and Cross-Complaint*

In May 2020, SVAP sued Fitness for breach of contract based on defendant's non-payment of rent. The complaint alleged that Fitness had defaulted on its obligations pursuant to the lease by failing to pay rent for April and May 2020, Fitness remained in occupancy of the premises, and SVAP had not terminated the lease. SVAP further alleged that it had performed or was excused from performing all its obligations under the lease. The complaint sought damages from Fitness for the outstanding rent payments, late payment service charges, interest, and attorneys' fees and costs. SVAP attached the parties' lease and its three amendments to the complaint.

Fitness filed an answer asserting 37 affirmative defenses to the complaint, including the equitable doctrines of frustration of purpose, impossibility, and impracticability. Fitness also filed a cross-complaint against SVAP for breach of contract, breach of the covenant of good faith and fair dealing, declaratory judgment, specific performance, and promissory

3

estoppel. Fitness alleged that the essential purpose of the lease was for Fitness to operate a full-service health club and fitness facility in the premises, but it was impossible for Fitness to do so for several months because of the COVID-19 pandemic and resulting closure of the premises in response to government orders. According to the cross-complaint, Fitness's inability to use the premises as a full-service health club and fitness facility meant it was not required to pay rent during the closure periods.

Fitness also alleged that SVAP breached the contract by failing to provide Fitness a credit for rent paid, failing to comply with the lease's provisions regarding rent abatement, and violating various other representations, warranties, and covenants by SVAP to Fitness in the lease. The cross-complaint further alleged that SVAP acted in bad faith by demanding payment under the lease and filing its lawsuit against Fitness. Fitness sought a judgment declaring, among other things, that it was not required to pay rent for the closure periods. It also sought specific performance of the lease's rent abatement provisions and the enforcement of certain promises alleged to have been made by SVAP.

D. *Summary Judgment Motion*

SVAP filed a motion for summary judgment seeking judgment in its favor on its breach of contract claim and dismissing Fitness's cross-

4

complaint.[2] SVAP contended that it was undisputed that the parties had entered into the retail lease, Fitness had withheld more than eight months' worth of rent, and its failure to pay was not due to lack of funds. SVAP argued that this failure to pay constituted a breach of the lease, the lease (including its force majeure provision) allocated the risk associated with the pandemic to Fitness and precluded Fitness's asserted defenses, and none of the other statutes or doctrines invoked by Fitness excused the breach.

Regarding Fitness's cross-claims, SVAP argued that Fitness's breach of contract claim based on abatement of rent failed because the obligation to pay rent under the lease was absolute and the lease provision regarding abatement of rent was intentionally omitted. SVAP argued that it was entitled to summary judgment on Fitness's remaining cross-claims because the good faith and fair dealing and declaratory relief claims were duplicative of the breach of contract claim, Fitness was not permitted to seek both specific performance and damages under the contract, and promissory estoppel did not apply because SVAP gave Fitness actual consideration in the form of possession of the premises.

E. *Summary Judgment Opposition*

Fitness opposed summary judgment, arguing that because its business operations were restricted intermittently during the pandemic, its obligation

---

[2]     Fitness also filed a motion for summary judgment, which the trial court denied. Although Fitness's briefing sometimes references both summary judgment motions and requests that we reverse both orders, Fitness has not differentiated between the two motions in its briefing or explained why, even if it is entitled to a reversal of the order granting summary judgment for SVAP, that means it is also entitled to a grant of its own summary judgment motion. For these reasons, and because we find the trial court properly granted summary judgment in favor of SVAP, we decline to separately address the order denying Fitness's summary judgment motion.

5

to pay rent was temporarily excused under Section 1511, the force majeure provision of the lease, and the equitable doctrines of impossibility, impracticability, and frustration of purpose. Fitness further argued that SVAP had materially breached the lease because during the closure periods: (1) Fitness did not have the right to use the premises as a health club or to quietly enjoy the premises without interruption and disturbance as warranted by SVAP; and (2) SVAP failed to abate rent as required. According to Fitness, SVAP was therefore not entitled to summary judgment.

F. *Trial Court's Ruling and Judgment*

The trial court disagreed with Fitness and granted SVAP's summary judgment motion. The court found that the following facts were "essentially undisputed": (1) the parties entered into a valid and binding contract for the lease of commercial premises in the Poway Shopping Center; (2) SVAP had performed its obligations under the lease, allowing Fitness to occupy the premises for more than 19 years; (3) beginning in April 2020, Fitness had intermittently failed to pay rent for the premises; and (4) as of October 2021, Fitness owed SVAP $520,361.29 in unpaid rent. Rejecting Fitness's various defenses, the court concluded that Fitness's performance under the contract was not excused. Specifically, the court found that Sections 1511(1) and 1511(2) did not apply, the force majeure provision of the lease did not apply, Fitness's performance was not impracticable or impossible, and the purpose of contract had not been frustrated such that there was a failure of consideration.

The court's decision rested in large part on its conclusion that the purpose of the contract was not, as Fitness argued, for Fitness to provide rent in exchange for SVAP providing the premises for a *particular use*. Rather, as the court explained: "[T]he contractual performance owed here by the tenant

6

is payment of rent. The Landlord's obligation was to provide possession of the premises. The tenant's particular use of the premises was not the obligation under the contract. Covid did not prevent performance of the obligation to pay rent." Based on this reasoning, the court rejected each of Fitness's defenses.

First, the court found, Section 1511(1) did not apply because it excuses contractual performance only where the performance is prevented or delayed by the operation of law, and no law had been enacted that prevented Fitness from paying rent. The court noted that one of the executive orders explicitly stated that commercial tenants remained obligated to pay their rent despite a moratorium on commercial tenant evictions. Second, Section 1511(2) did not apply because it excuses performance of contractual obligations only where the performance is prevented or delayed by an "irresistible, superhuman cause" and the parties have not expressly agreed otherwise. The court concluded that the parties here had expressly agreed otherwise by including a force majeure provision in their contract. Third, the lease's force majeure provision did not apply because (1) Fitness was not prevented by restrictive laws from performing under the lease, as its performance required only payment of rent, and (2) the lease stated that if failure to perform can be cured by the payment of money, it is not a force majeure event. Finally, the court similarly found that the doctrines of frustration of purpose, impossibility, and impracticability did not apply because Fitness's obligation to pay rent had not been rendered impossible or impracticable.

The court also determined that SVAP had not breached the lease. SVAP's obligation under the lease was to provide possession of the premises to Fitness, and it had fulfilled that obligation. The court therefore entered

7

judgment in favor of SVAP and against Fitness on SVAP's complaint and Fitness's cross-complaint.

On January 3, 2022, Fitness filed a notice of appeal without specifying the date of the order being appealed.  The notice stated that Fitness was appealing from a judgment after an order granting a summary judgment motion but attached only the minute order granting summary judgment.  We issued a notice to Fitness requesting that it submit a letter explaining why the appeal should not be dismissed on the ground that it was taken from a non-appealable order.  We also stated that if either party provided a copy of a final judgment, we would construe the notice of appeal as being from the final judgment.

On April 13, 2022, the trial court executed and filed a final judgment against Fitness.

DISCUSSION

A.  *Standard of Review*

Our review of the trial court's order granting plaintiff's motion for summary judgment is de novo.  (*Ryan v. Real Estate of Pacific, Inc.* (2019) 32 Cal.App.5th 637, 642.)  Fitness does not contend there exist any disputed issues of material fact here, so the question before us is purely legal.  (*Nathanson v. Hecker* (2002) 99 Cal.App.4th 1158, 1162.)

B.  *Analysis*

There is no dispute SVAP has established the following elements for its breach of contract claim based on Fitness's non-payment of rent:  (1) the existence of a valid and binding contract between the parties for the lease of retail premises; (2) SVAP permitted Fitness to occupy the premises for the term of the lease; (3) beginning in April 2020, after the start of the pandemic and resulting closure orders, Fitness intermittently failed to pay rent to

8

SVAP for several months; and (4) as of October 2021, Fitness owed $520,361.29 to SVAP in unpaid rent. (See *Property Cal. SCJLW One Corp. v. Leamy* (2018) 25 Cal.App.5th 1155, 1162.) The crux of the parties' dispute on appeal is whether Fitness's obligation to pay rent during the closure periods was excused.

Fitness urges us to answer this question in the affirmative. Relying on its interpretation of the terms of the lease, Section 1511, and the equitable doctrines of impossibility, impracticability, and frustration of purpose, Fitness contends that its performance was excused. We address each of Fitness's arguments in turn, which are all founded on the same basic premise: SVAP promised that Fitness would have the right to operate a health club and fitness facility at the property throughout the term of the lease. As we will explain, we disagree with this premise and therefore reject each of Fitness's arguments.

1. *SVAP's Alleged Breach of the Lease*

Fitness first contends that its obligation to pay rent was abated during the closure periods because SVAP breached its promise that Fitness would have the right to operate a health club and fitness facility throughout the term of the lease. Fitness points to Section 1.9 of the lease as guaranteeing this right. Because SVAP allegedly breached its promise during the closure periods, Fitness claims it was not required to pay rent for those periods.[3]

SVAP argues that Section 1.9 merely provides that Fitness would be able to use the premises as a fitness facility at the commencement of the

---

[3] Fitness also contends that SVAP's guarantee of Fitness's right to operate the premises as a health club and fitness facility was a condition precedent to Fitness's performance. Because we find that the parties' lease did not guarantee Fitness the right to operate the premises for a particular use, we need not reach this argument.

9

lease, which it did (and continues to do now). The lease did not obligate SVAP to guarantee Fitness would be legally permitted to operate a fitness facility throughout its term. In further support of its argument that SVAP was not required to ensure a particular use of the premises, SVAP points out that Section 1.9 expressly permits *any* lawful use of the premises.

We agree with SVAP's interpretation of the lease. Section 1.9, on which Fitness relies, is titled "Initial Uses" and provides that the *initial uses* of the premises "shall be for the operation of a health club and fitness facility." Section 8.1, titled "Tenant's Initial Use," provides that Fitness "shall open for business from the Premises for a period of at least one (1) day for the Initial Uses set forth in Section 1.9." Section 2.2, titled "Landlord's Representations, Covenants and Warranties," provides that "as of the Effective Date, Tenant's Initial Uses of the Premises will not violate any applicable rule, regulation, requirement or other law of any governmental agency, body or subdivision thereof applicable as of the date hereof." The effective date, as defined in the lease, is June 12, 2002. The plain language of the lease therefore demonstrates that (1) Fitness was required to operate the premises as a health club and fitness facility *for one day*, and (2) SVAP guaranteed that the operation of the premises as a health club and fitness facility would be legally permissible only as of June 12, 2002. Both parties satisfied those obligations more than 20 years ago.

Section 1.9 also provides that Fitness "shall have the right throughout the Term and all Option Terms to operate *for uses permitted under this Lease*." (Italics added.) Fitness repeatedly asserts that this means SVAP "guaranteed" it the right to operate, free from government interference, a fitness facility at the premises throughout the term of the lease. We cannot agree. As Fitness noted, a key rule of contract interpretation is that, to the

10

extent practicable, the contract should be read so as to give effect to all provisions and avoid rendering some meaningless. (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1027.) The parties' inclusion of Section 2.2—which requires SVAP to guarantee that, "as of the Effective Date, Tenant's Initial Uses of the Premises will not violate any applicable rule, regulation, requirement or other law of any governmental agency, body or subdivision thereof applicable as of the date hereof"—would be rendered meaningless if Section 1.9 were read to require SVAP to make that guarantee throughout the term of the lease.

Instead, the reasonable interpretation of Section 1.9 is that SVAP merely agreed not to restrict Fitness from using the premises in any way permitted under the lease. Section 8.2 supports this interpretation, as it specifically allows Fitness to "change the use of the Premises to any alternate lawful retail use" not otherwise prohibited by the lease or certain other restrictions. This language further underscores that SVAP's obligation under the contract was not to ensure Fitness's ability to operate a health club and fitness facility for the entire duration of the lease term, but rather to provide Fitness with possession of the premises in exchange for its payment of rent to SVAP.

Fitness does not dispute that SVAP has provided possession of the premises throughout the lease term, nor does Fitness argue that SVAP—as opposed to the government—has restricted its use of the premises in any

11

way. We therefore conclude that SVAP fulfilled its obligations and has not breached the lease.[4]

### 2. *Force Majeure Provision*

Fitness next contends that its performance is excused because the government closure orders resulting from the COVID-19 pandemic constitute a force majeure event under the lease. SVAP argues that because the performance required of Fitness under the lease was the payment of rent, and the closure orders did not prevent Fitness from paying rent, the force majeure provision does not apply. SVAP has the better argument.

Section 22.3, which defines what constitutes a force majeure event under the lease, provides in relevant part: "If either party is delayed or hindered in or prevented from the performance of any act required hereunder because of . . . restrictive Laws . . . or other reason of a similar or dissimilar nature beyond the reasonable control of the party delayed, financial inability excepted (any 'Force Majeure Event'), performance of such act shall be excused for the period of the Force Majeure Event[.] . . . Delays or failures to perform resulting from lack of funds or which can be cured by the payment of money shall not be Force Majeure Events." Fitness argues that the government orders prohibiting the operation of health clubs during the closure periods were "restrictive laws" beyond the reasonable control of the parties and thus qualify as a force majeure event under the lease. According to Fitness, the trial court erred in finding the force majeure provision did not apply because the court "did not consider the effect of the Force Majeure

---

[4] Fitness does not explicitly argue that the trial court erred in granting summary judgment to SVAP on Fitness's counterclaim for breach of contract. We therefore need not reach this issue, but, if we did, Fitness's counterclaim fails for the same reasons its defense asserting SVAP's breach of contract fails: SVAP did not materially breach the lease.

12

Event on Fitness's right to operate a health club and fitness facility on the Premises, or how the Force Majeure Event *hindered* Fitness's performance."

While we agree with Fitness that the closure orders are "restrictive laws," we do not agree that these laws delayed, hindered, or prevented Fitness from performing under the contract. Nor do we find any error in the court's analysis. First, as we have already explained, the lease does not require SVAP to guarantee Fitness the unlimited right to use the premises as a health club and fitness facility even when prohibited by law. Rather, the obligation owed by SVAP was the delivery of the premises to Fitness. SVAP fulfilled that obligation. Second, the trial court properly concluded that the obligation owed by Fitness was the payment of rent. There is no evidence or argument before us that the pandemic and resulting government orders hindered Fitness's ability to pay rent. Even if they had, the lease explicitly excludes from the definition of force majeure event any "failures to perform resulting from lack of funds or which can be cured by the payment of money." We thus conclude that the plain text of the force majeure provision precludes its application here.

3. *Impossibility and Impracticability*

Fitness's claims of impossibility and impracticability are similarly unpersuasive. Impossibility is defined "as not only strict impossibility but [also] impracticability because of extreme and unreasonable difficulty, expense, injury, or loss involved." (*Autry v. Republic Prods.* (1947) 30 Cal.2d 144, 149 (*Autry*); see also *Mineral Park Land Co. v. Howard* (1916) 172 Cal. 289, 293 [" 'A thing is impossible in legal contemplation when it is not practicable; and a thing is impracticable when it can only be done at an excessive and unreasonable cost.' "].) The defense of impossibility may apply where, as here, a government order makes it unlawful for a party to perform

13

its contractual obligations. (*County of Yuba v. Mattoon* (1958) 160 Cal.App.2d 456, 458–459 (*Yuba*).)

Fitness contends that the defense of impossibility applies here because the government closure orders made it illegal for it to operate its fitness facility. But, as we have explained, Fitness's obligation under the lease was to pay rent, not to operate a fitness facility. The government closure orders did not make it illegal for Fitness to pay rent. In fact, one of the orders explicitly stated that it did not relieve a tenant of the obligation to pay rent.

According to Fitness, our analysis should focus not on its ability to perform its obligation to pay rent, but instead on the *object* of the contract, as that is what became impossible. Fitness seems to be conflating impossibility with frustration of purpose, but in any event provides no support for this argument. Case law addressing the doctrine of impossibility almost invariably refers to impossibility *of performance*, and the question to be decided is whether the party asserting the defense has demonstrated that it was impossible to perform its own contractual obligations to the other contracting party such that it may avoid liability for its non-performance. (See, e.g., *Autry*, *supra*, 30 Cal.2d at pp. 148–149; *Yuba*, *supra*, 160 Cal.App.2d at pp. 458–459; *Glens Falls Indem. Co. v. Perscallo* (1950) 96 Cal.App.2d 799, 801–802.) Nothing about the pandemic or resulting closure orders has made Fitness's performance of its obligation to SVAP—paying rent—impossible. And "[t]here is no impossibility of performance where one party has rendered services as agreed and nothing remains for the other party to do but pay the agreed compensation." (*Browne v. Fletcher Aviation Corp.* (1945) 67 Cal.App.2d 855, 862.) The doctrine of impossibility therefore does not apply here.

14

4. *Civil Code Section 1511*

Fitness also contends that Sections 1511(1) and 1511(2) excuse its obligation to pay rent during the closure periods. SVAP counters that the trial court correctly found that neither section applies here. We again agree with SVAP.

Section 1511(1) provides that a party's performance of its contractual obligation is excused where the operation of law prevents or delays the performance. (Civ. Code, § 1511(1).) Fitness relies on *Baird v. Wendt Enterprises, Inc.* (1967) 248 Cal.App.2d 52 (*Baird*) to argue that the government orders constitute an operation of law that prevented Fitness from using the premises during the closure periods and thus excuses its obligation to pay rent. *Baird*, which merely stands for the undisputed proposition that there is no liability for breach of a contract where performance has been made impossible by operation of law, is inapposite here. (*Id.* at p. 55.) As the trial court correctly concluded, Section 1511(1) does not excuse Fitness's performance because the pandemic and resulting government orders did not prevent Fitness from performing its contractual obligation to pay rent. Indeed, one of the orders explicitly stated that commercial tenants (such as Fitness) remained obligated to pay their rent despite a moratorium on commercial tenant evictions. Section 1511(1) therefore does not excuse Fitness's payment of rent.

Section 1511(2) similarly lends no support to Fitness. It excuses performance only where prevented or delayed by an "irresistible, superhuman cause" *and* the parties have not "expressly agreed to the contrary." (Civ. Code, § 1511(2).) The irresistible, superhuman cause identified by Fitness here is the COVID-19 pandemic. Again, however, the pandemic did not prevent Fitness from performing its contractual obligation

15

to pay rent.  Moreover, the parties had "expressly agreed to the contrary" by including a force majeure provision in their contract stating that any failure to perform that could be cured by the payment of money would not constitute a force majeure event.  Thus, Section 1511(2) does not excuse Fitness's failure to perform.

5. *Frustration of Purpose*

Finally, Fitness contends that its obligation to pay rent was excused under the doctrine of temporary frustration of purpose because the value of the lease was destroyed by the government orders during the closure periods. We do not agree.

The doctrine of frustration excuses contractual obligations where " '[p]erformance remains entirely possible, but the whole value of the performance to one of the parties at least, and the basic reason recognized as such by *both* parties, for entering into the contract has been destroyed by a supervening and unforeseen event.' " (*Dorn v. Goetz* (1948) 85 Cal.App.2d 407, 410 (*Dorn*).)  A party seeking to escape the obligations of its lease under the doctrine of frustration must show:  (1) the purpose of the contract that has been frustrated was contemplated by *both* parties in entering the contract; (2) the risk of the event was not reasonably foreseeable and the party claiming frustration did not assume the risk under the contract; and (3) the value of counter-performance is totally or nearly totally destroyed. (*Id.* at pp. 411–413; *Lloyd v. Murphy* (1944) 25 Cal.2d 48, 53–54 (*Lloyd*).) Governmental acts that merely make performance unprofitable or more difficult or expensive do not suffice to excuse a contractual obligation.  (*Lloyd*, at p. 55.)

SVAP argues that the doctrine of frustration does not apply because (1) the purpose of the contract here was to grant a lease in the premises to

16

Fitness, not the operation of a fitness facility, in exchange for the payment of rent; (2) the lease allocated the risk of government-ordered closures to Fitness; and (3) even if the purpose of the lease were the operation of a fitness facility, the closure orders preventing the operation of a fitness facility for a period of months did not destroy the value of a decades' long lease agreement. We agree with SVAP as to its third argument, so we need not decide the others.

Assuming, as Fitness argues, that the primary purpose of the lease was for Fitness to operate a health club and fitness facility (and the lease did not allocate the risk created by the government closure orders to Fitness alone), we still conclude that the orders did not result in the destruction of the lease's purpose and value such that Fitness's performance was excused.[5] The parties entered into the lease in June 2002, and the current lease term ends in October 2025. The temporary government closure of a fitness facility for a period of months when the premises have been leased for more than 19 years—and the lease term spans more than 23 years total—does not amount to the kind of complete frustration required for the doctrine to apply. "Even more clearly with respect to leases than in regard to ordinary contracts[,] the applicability of the doctrine of frustration depends on the *total or nearly total destruction* of the purpose[.]" (*Lloyd, supra*, 25 Cal.2d at p. 53, italics added.) Frustration is not an available defense where, as here, counter-performance has been and remains valuable. (See *id*. at p. 54.) Because the value of the

---

5       We note, however, that it is not clear from the lease that *both* parties contemplated at the time of contracting that the sole purpose of the lease was for Fitness to operate a fitness facility. (See *Dorn, supra*, 85 Cal.App.2d at p. 411; *Brown v. Oshiro* (1945) 68 Cal.App.2d 393, 397.) The lease only required Fitness to operate a fitness facility for one day and permitted other uses thereafter.

lease has not been totally or substantially destroyed, Fitness's performance is not excused.

Our conclusion is supported by the rule that where commercial frustration *does* apply, the "legal effect . . . is the immediate termination of the contract."  (*Johnson v. Atkins* (1942) 53 Cal.App.2d 430, 435; see also *20th Century Lites, Inc. v. Goodman* (1944) 64 Cal.App.2d Supp. 938, 945 (*20th Century Lites*) ["frustration brings the contract to end forthwith"].)  As amicus curiae points out, because the application of the doctrine of frustration under California law compels the termination of the contract, the law does not recognize the "temporary" frustration defense Fitness attempts to assert here.

In *20th Century Lites*, the defendant argued that the court should not only apply the doctrine of frustration to excuse its payments under the lease, but also find that the effect of the government regulation at issue "was to merely suspend, rather than terminate, the contract" during the existence of the regulation.  (*20th Century Lites*, *supra*, 64 Cal.App.2d at p. Supp. 945.)  The court rejected this concept of "temporary" frustration, concluding that "[s]uch is not the rule in cases where the doctrine of commercial frustration applies.  On the application of such doctrine, the promisor 'is discharged from the duty of performing his promise . . . [and] such a frustration brings the contract to an end forthwith, without more and automatically.' "  (*Ibid.*)  The court thus concluded that, conversely, where a government regulation is not a permanent prohibition but merely temporary, the commercial frustration doctrine does not apply.  (*Id.* at p. Supp. 946.)  The government closure orders here were temporary, which precludes the application of a commercial frustration defense.

18

It is also clear from the parties' actions and argument that neither considered the contract to terminate as a result of the orders. On the contrary, Fitness continued to occupy the premises throughout the closure periods and did not attempt to rescind the lease. It therefore remains obligated to pay rent while in possession of the premises. (*Grace v. Corninger* (1936) 12 Cal.App.2d 603, 606 ["liability under the lease continues as long as the lessee continues in possession"].)

Fitness's reliance on *Maudlin v. Pacific Decision Sciences Corp.* (2006) 137 Cal.App.4th 1001 (*Maudlin*) in support of its argument for "temporary" frustration is misplaced, because that case involved temporary *impossibility*. The *Maudlin* court recognized in its discussion that the Second Restatement of Contracts, on which it relied in part, "consolidates the subjects of impracticability and frustration of purpose, substituting the term 'impracticability' for 'impossibility.' " (*Id.* at p. 1017, fn. 6.) California law, however, treats impossibility and frustration of purpose as distinct. Our Supreme Court has made clear that "frustration is not a form of impossibility of performance." (*Autry, supra*, 30 Cal.2d at p. 148; see also *Lloyd, supra*, 25 Cal.2d at p. 53.) *Maudlin* therefore does not support Fitness's position.

We are sympathetic to the hardship Fitness and other businesses faced due to the pandemic and resulting closure orders. However, neither the terms of the lease nor the equitable doctrines invoked by Fitness afford it the requested relief. We therefore conclude that the trial court correctly ruled SVAP is entitled to summary judgment against Fitness.[6]

---

[6] We deny SVAP's request for judicial notice of various rulings in other cases involving Fitness, as the documents are not relevant or necessary to resolve this appeal. (See *Save Lafayette Trees v. East Bay Regional Park Dist.* (2021) 66 Cal.App.5th 21, 29, fn. 2.)

## DISPOSITION

The judgment is affirmed.  SVAP is awarded its costs on appeal.


                                                    BUCHANAN, J.

WE CONCUR:



HUFFMAN, Acting P. J.



O'ROURKE, J.