[Civ. No. 2293. Fourth Appellate District.—February 15, 1940.]

GRAHAM–LOFTUS OIL CORPORATION (a Corporation), Appellant, v. MOUNTAIN VIEW DEVELOPMENT CORPORATION (a Corporation) et al., Defendants and Respondents; A. BRAIN et al., Interveners and Respondents.

318

George E. Farrand and Edward W. Tuttle for Appellant.

Harvey, Johnston & Baker for Defendants and Respondents.

Merritt D. Jergins and Simon Miller for Interveners and Respondents.

THOMSON, J., *pro tem.*—This is an appeal by plaintiff from a judgment of the court, sitting without a jury, in a claim and delivery suit to recover oil well drilling equipment, adjudging that defendants are entitled to a bill of sale from plaintiff for said drilling equipment theretofore purchased under a conditional sales contract; and that interveners may foreclose and sell said equipment under a subsequent chattel mortgage executed by defendant corporation.

Under date of January 10, 1934, certain individuals entered into an oil and gas lease, as lessors, with Walter M. Crawford, as lessee, covering 80 acres of land in Kern County. The lessee's interest was subsequently assigned to the defendant corporation. The lease stipulated that other than one assignment of the entire interest of lessee to a California corporation, assignments might be made only upon the written consent of lessors first had and obtained. On May 12, 1934, plaintiff, as seller, entered into a contract with defendants, excepting defendant Fishfader, as buyers, whereby said defendants agreed to purchase from plaintiff a rotary oil well drilling outfit. The agreement contained the following clause: "Price: The cash purchase price for said equipment shall be Ten Thousand Dollars ($10,000.00) . . . " Then follow clauses providing for the payment of monthly installments

of $1,000 each. The agreement also provides that "in addition to the cash price above mentioned and as further consideration for said equipment, the buyers agree to deliver to seller five per cent (5%) of the gross amount of all oil and gas which may hereafter be produced by buyers, their successors or assigns" on said land "on which Mountain View Development Company now holds a lease". As a further consideration the defendants agreed to abandon plaintiff's "Well No. 1" in Fresno County, where the drilling equipment was located, in compliance with law and the rules of competent public authority. The buyers also agreed that "until the said cash purchase price shall have been paid buyers shall use and maintain said equipment in a careful and workmanlike manner. . . . " A default clause provided that "in event of any default on the part of buyers in the payment of any installment of the cash purchase price . . . or in the observance or performance of any condition or covenant on their part hereunder. . . . " plaintiff might declare the whole amount of the unpaid cash purchase price due and payable and might take such action to collect the same as it might elect, or it might repossess the property. Title to the equipment was reserved in the seller until the full purchase price was paid. The seller agreed to execute and deliver to the buyers a bill of sale to the equipment "when buyers shall have paid the full cash purchase price and are not then in any default in the observance or performance of any other covenants or conditions . . . "; and it was agreed that "at such time buyers shall execute, acknowledge and deliver to seller" an "instrument in form satisfactory to seller as the latter shall designate, evidencing seller's right to receive five per cent (5%) of all oil and gas thereafter produced by buyers . . . " on said premises. There is evidence to the effect that the individual defendants do not claim any interest in the personal property or leasehold, but were guarantors of defendant corporation. The defendant corporation abandoned the well above mentioned at a cost of about $1500 and removed the equipment to said leased premises, where it drilled a well. It paid plaintiff all installments of the cash purchase price and, upon payment of the last installment, requested a bill of sale of said equipment, but plaintiff refused to execute such bill of sale on the ground that defendant corporation was not entitled to a bill of sale until it had exe-

cuted an assignment of five per cent of such oil and gas. At that time defendants were unable to execute such an assignment because some of the lessors declined to sign a consent to such assignment until the well was completed. However, such consent was later secured and defendants also obtained a permit from the corporation commissioner to make such assignment, and on February 9, 1939, while this case was pending, defendant corporation deposited such an assignment with an escrow holder approved by the corporation commissioner, in accordance with the requirements of such permit, and filed a supplemental answer setting forth those facts. On February 17, 1935, Oil Well Supply Company, a corporation, assignor of the interveners, took a note and chattel mortgage on said equipment for $6,500, which the interveners assert was executed and accepted with the consent of plaintiff, and they seek to foreclose said chattel mortgage and sell said equipment. The trial court rendered judgment that plaintiff take nothing by its complaint and directing plaintiff to execute a bill of sale of said equipment to defendant corporation and directing the foreclosure of the chattel mortgage and the sale of the mortgaged property.

Appellant presents numerous points in its briefs, but they may be fairly summarized in two main issues. As between plaintiff and defendants the principal issue is whether or not the defendants, as buyers, complied with the requirements of the conditional sales contract so as to be entitled to a bill of sale from plaintiff; and as between plaintiff and the interveners the principal issue is whether or not a chattel mortgage taken from defendants by the assignor of the interveners, with knowledge of said conditional sales agreement, was valid by reason of an alleged estoppel claimed by the interveners.

■ Appellant urges that the trial court's conclusion and judgment that defendant corporation is entitled to possession of, and to the bill of sale to, the drilling equipment, is contrary to the findings of fact and the evidence, in that defendants breached the conditional sales contract because they failed to execute and deliver to plaintiff an instrument, as required by said contract, evidencing plaintiff's right to receive 5 per cent of the gas and oil produced on the leased premises.

We think the evidence shows that defendants have not failed or refused to execute and deliver to plaintiff an instru-

ment evidencing appellant's right to receive said percentage of oil and gas provided for in the conditional sales agreement. On March 6, 1935, plaintiff, through its attorneys, wrote to defendants, stating, among other things, that it would be necessary for the defendant corporation to obtain a permit from the corporation commissioner authorizing said defendant to execute and deliver to plaintiff the assignment of royalty provided for in the conditional sales contract. Plaintiff also prepared and delivered to defendants a form of application for such permit. After defendant corporation received said permit it executed such an assignment and deposited it with an escrow holder approved by the corporation commissioner, in accordance with a requirement of said permit. ▇ It is true that, at the time the last installment of the cash purchase price was paid, when defendants requested a bill of sale, they were not in a position to make an assignment of any royalty interest, because it required the consent of the lessors above mentioned, and some of them declined to give such consent until the well was completed.

▇ Appellant cites many authorities which support the well-established principles of law that inability to perform does not excuse nonperformance if the thing to be done was not inherently impossible of performance, and that, one who makes a promise which cannot be performed without the consent or cooperation of a third person, cannot excuse his nonperformance because of his inability to secure the required consent or cooperation of such person. We think, however, a distinction exists where the inability to perform is merely temporary and does not affect the essence of the contract (*United States Trading Corp.* v. *Newmark Grain Co.,* 56 Cal. App. 176, 186 [205 Pac. 29]) ; and particplarly where it causes no damage to the other party, as appears in the instant case. That the 5 per cent royalty ˙was regarded as highly speculative and not considered by appellant as the essence of the conditional sales agreement is indicated by the fact that the contract provided for a ''cash purchase price'' of $10,000 and stipulated that, until the ''cash purchase price'' had been paid, the buyers were obligated to keep the equipment in good condition and repair. There was no requirement to keep the equipment which appellant agreed to sell to respondent in good condition until the 5 per cent royalty had been assigned to appellant, or until any of the

322

terms or conditions of the contract was performed except the payment of the "cash purchase price". The record also discloses the fact that plaintiff, through its agents, was familiar with the terms of the lease above referred to, having been given a copy thereof for reference in preparing the conditional sales contract. One of the terms of the lease prohibited assignments of any interest by the lessee without the consent of the lessors first had and obtained. Appellant argues that, regardless of the clause in the lease prohibiting assignments without the written consent of the lessors, the defendants should have executed and delivered the instrument, evidencing the right of appellant to 5 per cent of such oil and gas, because it would not constitute an assignment of any interest in the lease. But the evidence shows that appellant itself requested defendants to obtain such consent of the landowners, as disclosed by the form of consent of said lessors appended to the application for a permit of the corporation commissioner prepared by plaintiff and mentioned above. Appellant cannot now complain that such consent was not necessary. When plaintiff offered, by a letter dated March 6, 1935, to give defendants a bill of sale on condition that defendants execute and deliver the royalty assignment, defendants endeavored to obtain the consent of the lessors, but some of them at that time declined to join in such consent. These endeavors on the part of defendants were continued until such consent was obtained in 1939, whereupon defendants took immediate steps to obtain the permit of the corporation commissioner, and having received it, promptly executed the royalty assignment and deposited it in escrow as required by said permit. There is evidence to the effect that oil was never produced in commercial quantities from the well on said leased premises and that the small production obtained was not sufficient to furnish necessary fuel for defendants' operations in endeavoring to bring in the well. The lease exempted from royalty payments "so much of the water, oil and/or gas produced on said property as may be required in the operation of the property". Appellant having received a copy of the lease, knew of this provision, and knew that necessary fuel oil and gas would be exempted from the payment of any royalty. It is also a significant fact, as indicative of appellant's interpretation of the royalty clause of the conditional sales contract, that, in the form of assignment of

the 5 per cent royalty appended to the form of application for a permit of the corporation commissioner, prepared by plaintiff and delivered by plaintiff to defendants, such royalty was confined to 5 per cent of the oil and gas produced under the terms of said lease. It is apparent, then, that the inability to perform on the part of defendants was only temporary; that it did not affect the essence of the conditional sales contract; and, while the delay was for a considerable period of time, still it occurred during an *interim* when the delay was harmless, as no production of oil or gas was obtained from which to pay any royalty.

■ Appellant next attacks the finding to the effect that defendant delivered or caused to be delivered to plaintiff an assignment satisfactory in form to plaintiff, evidencing plaintiff's right to receive 5 per cent royalty. In this connection appellant complains that the instrument was not delivered to appellant and that the evidence did not show that the instrument was in form satisfactory to appellant. However, the corporation commissioner's permit required it to be delivered to an escrow holder until the further order of the commissioner. In accordance therewith the instrument was executed and placed in escrow with an escrow holder approved by said commissioner, and the escrow holder recorded the instrument and delivered a copy thereof to appellant. Such delivery, we think, under the circumstances of this case, is equivalent to a delivery directly to appellant.

It is important also to note that, in plaintiff's letter to defendants dated March 6, 1935, plaintiff informed defendants that it was necessary to obtain a permit from the corporation commissioner to execute and deliver said assignment of 5 per cent royalty. Appellant, therefore, is bound by the terms and conditions imposed by the corporation commissioner in his permit, one of which is that the assignment be held in escrow until the further order of the commissioner. Appellant cannot now be heard to complain because defendants have obtained such permit and have executed and delivered the royalty assignment as required in said permit. ■ The form of assignment is in accordance with the terms of the conditional sales contract and, in a letter from defendant corporation to plaintiff dated February 18, 1939, enclosing a copy of the assignment, defendant corporation agrees to comply with the conditional sales contract relative to the manner

of delivering or paying for said royalty. Plaintiff could have no reasonable objection to the form of assignment of the 5 per cent royalty. Moreover, no objection was offered at the trial to the form of assignment.

Appellant further attacks the assignment on the ground that the individuals who signed the conditional sales contract as buyers did not join in the assignment. There is evidence which indicates that these individuals signed the conditional sales contract merely as guarantors of the defendant corporation for the payment of the cash purchase price. It should be noted also that the defendant corporation was the sole owner of the lease, and the form of assignment appended to said application for said permit prepared by plaintiff confined the 5 per cent royalty to oil and gas produced under said lease on the land therein leased, and designated that the assignment was to be executed by the corporation defendant alone. Under these circumstances the signatures of the individual defendants were unnecessary and appellant may not complain of their absence.

Under the circumstances disclosed by the evidence we think that defendants did not breach the conditional sales contract by failing to deliver to plaintiff any oil or gas; that the temporary inability of defendants to execute and deliver a proper assignment of said 5 per cent royalty was not of unreasonable duration; that no damage to plaintiff resulted from such delay; and that there was a substantial compliance by defendants with the terms of said conditional sales contract. Appellant has received the full amount of the cash purchase price, the Fresno County well has been lawfully abandoned, and the instrument assigning a 5 per cent royalty has been executed and delivered in accordance with the permit issued by the corporation commissioner. We, therefore, believe the trial court was justified in refusing to permit a forfeiture and in requiring the appellant to proceed with the performance of said contract. (12 Am. Jur., p. 963, sec. 387.)

Appellant's final contention is that the evidence does not support the finding that plaintiff, by and through its agents duly authorized so to do, informed Oil Well Supply Company (interveners' predecessor) that the drilling equipment was paid for and was owned by the defendant corporation and that plaintiff consented to the execution of a chattel

mortgage thereon. As a conclusion of law the trial court found that plaintiff is estopped from claiming any interest in or any right of possession to the drilling equipment as against both defendants and interveners. The finding of fact and conclusion of law above referred to are made the basis of the judgment of foreclosure of the chattel mortgage held by the interveners. The complaint in intervention sets up a chattel mortgage for $6,500 dated February 17, 1935 (subsequent to the execution of said conditional sales contract), executed by the defendant corporation to Oil Well Supply Company and assigned to the interveners, who claim an estoppel as against the plaintiff. In support of their theory of estoppel the interveners introduced the testimony of W. A. MacMullen, who testified, in substance, that he was employed in the credit department of Oil Well Supply Company; that on February 17, 1935, he was called to Bakersfield in connection with the proposed chattel mortgage and, before consummating the transaction, he telephoned to Hugh B. Martin (general manager of plaintiff) with whose voice he was familiar, and told Mr. Martin that his (MacMullen's) company contemplated taking a chattel mortgage on said drilling equipment which he understood defendant corporation had purchased from plaintiff, and he wanted to know if the equipment was clear. In this connection he testified as follows: ''He told me that the material was paid for but that there was a matter of either a per cent or interest which was being adjusted at that time and it would be satisfactory for us to take the mortgage''. Martin denied that he made such a statement, but this merely raises a conflict in the evidence and the trial court has accepted MacMullen's version of the conversation. The significance of the testimony of the witness MacMullen cannot be fairly appraised without first considering the evidence in regard to Martin's connection with the whole transaction. He was the general manager of plaintiff. The negotiations for the purchase of the equipment were with him. He specified the price and the terms and the deal was consummated by him. He accepted the final cash payment and conferred with the buyers concerning their bill of sale and, so far as the evidence discloses, was the agent of the plaintiff corporation with whom defendants had dealt throughout the entire transaction, except that the contract was signed by the president and secretary of plaintiff corpora-

tion. When MacMullen talked with Martin the full cash purchase price for the equipment had been paid, the Fresno County well had been properly abandoned and drilling on the leased premises was still in progress. Defendant corporation needed casing to complete the well and had arranged to purchase it from the Oil Well Supply Company. The payment for the pipe, together with an open account, was to be secured by a chattel mortgage on all equipment. Of course, it was to plaintiff's best interests to have defendant corporation complete the well and start paying plaintiff the 5 per cent royalty if oil or gas should be found. MacMullen had caused the pipe to be stopped in transit and then talked to Martin before allowing delivery to defendant corporation. Under such a state of facts, a waiver such as the interveners claim plaintiff made was not incredible, but was plausible enough to cause a reasonable man in MacMullen's circumstances to act upon Martin's assurance that the equipment was paid for and that it was satisfactory to plaintiff for the Oil Well Supply Company to take the chattel mortgage on the equipment.

Appellant advances the contention that Martin's waiver was not within the scope of his authority as general manager of plaintiff and that such a waiver could not be given without express authority from plaintiff's board of directors, and appellant cites numerous cases in support of his position, most of which involve the right of corporate agents to execute or modify contracts entered into directly with the other contracting parties. Here we are not dealing with the question of an agent's power to execute or release a chattel mortgage without express authority from the board of directors, but rather with the question of whether or not a corporation can be estopped to assert a claim of title to or right of possession of personal property by reason of representations made by its general manager to a third party and relied upon by such third party. In the instant case Martin was the general manager of plaintiff corporation. He was the agent who handled this particular transaction from its inception and MacMullen had a right to infer that Martin had authority to bind plaintiff corporation in the transaction involved. (*Venice* v. *Short Line Beach Land Co.*, 180 Cal. 447, 452 [181 Pac. 658]; *Ray* v. *Borgfeldt*, 169 Cal. 253, 265 [146 Pac. 679]; *Western Lith. Co.* v. *Vanomar Producers*, 185 Cal. 366, 368 [197 Pac. 103]; *Stevens* v. *Selma Fruit Co., Inc.*, 18 Cal.

App. 242, 250 [123 Pac. 212].) Martin might have refused to respond to MacMullen's inquiry, but having undertaken to give him information, knowing as he did that MacMullen intended to act upon it, his company is bound by his representation. (*Seaman* v. *Big Horn Canal Assn.*, 29 Wyo. 391 [213 Pac. 938, 940].)

It follows that plaintiff, having thus led the Oil Well Supply Company to believe that the pipe was paid for and that it was satisfactory to plaintiff for the Oil Well Supply Company to take said chattel mortgage, and having thus induced said company to deliver the pipe to and accept the chattel mortgage from defendant corporation, plaintiff is estopped to claim the drilling equipment as against the interveners. (*Burgess* v. *California Mut. Bldg. & Loan Assn.*, 210 Cal. 180, 187 [290 Pac. 1029] ; *Dool* v. *First Nat. Bank of Calexico,* 209 Cal. 717, 724 [290 Pac. 15] ; *Carpy* v. *Dowdell,* 115 Cal. 677, 682 [47 Pac. (2d) 695].)

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.