[Civ. No. 14605.   Second Dist., Div. Three.   Mar. 14, 1945.]

LEON B. BROWN, as Trustee, etc., et al., Appellants, v. Y. OSHIRO, Respondent.

Monroe B. Kulberg for Appellants.

No appearance for Respondent.

A. L. Wirin and J. B. Tietz as Amici Curiae on behalf of Respondent.

FOX, J. pro tem.—This is an appeal by the plaintiffs from a judgment in favor of the defendant in an action for declaratory relief.

Plaintiffs leased to defendant, a Japanese, the second floor of the building located at the northeast corner of First and Los Angeles Streets, in the city of Los Angeles, for the period from February 1, 1940, to January 31, 1944, at a rental of $175 per month. Defendant operated a hotel business in the demised premises until May 8, 1942. On May 3, 1942, a Civilian Exclusion Order, issued by the military authorities, ordered that from and after May 11, 1942, all persons of Japanese ancestry be excluded from the area in which the hotel was located. On said last mentioned date defendant and all other persons of Japanese ancestry were evacuated from the city of Los Angeles and were excluded by Civilian Exclusion Orders from said area during the remainder of the term of said lease.

The lease provided that "the lessee shall use the premises for conducting a hotel and renting office space, and for no

other purpose, except upon the written consent of the lessors.'' It also provided that ''the lessee shall personally occupy said demised premises.'' It was further provided that the lease could not be assigned or the premises sublet without the written consent of the lessors.

It was stipulated that at no time during the period covered by the lease did the defendant actually reside on the premises. He employed various persons to reside therein and manage his hotel business. Each day, however, he visited the premises and advised said manager with respect to various matters and assisted in doing the physical labor necessary to the operation of said business. On May 5, 1942, plaintiffs sent defendant a letter in which they waived any requirement of the lease that he personally occupy the premises and consented to any assignment or sublease he might care to make. On May 8, 1942, defendant, with consent of the plaintiffs, sublet the premises to H. J. Marrs, at a rental of $100 per month. He immediately went into possession. The plaintiffs commenced this action for declaratory relief in which they sought to have it determined that the lease was still binding. The original judgment was in favor of plaintiffs, but it was reversed (on an appeal on the judgment roll) and remanded for a new trial. (See *Brown* v. *Oshiro* (1943), 58 Cal.App.2d 190 [136 P.2d 29].) The plaintiffs have since filed an amended and supplemental complaint and defendant has filed an answer thereto.

The trial court found, among other things, that prior to the evacuation order 75 per cent of the tenants in number, on the average, in said hotel were of Japanese ancestry, and inferentially that 25 per cent were non-Japanese; that the hotel was located in the heart of the area known as ''Little Tokio''; that the parties, at the time of the execution of said lease, intended that defendant should personally conduct a Japanese hotel, that is, one catering primarily to persons of Japanese ancestry; that by virtue of the removal of all Japanese from the area defendant could not operate the kind of a hotel contemplated by the parties when the lease was executed.

As conclusions of law the court concluded that the terms and conditions of the lease were impossible to perform by defendant after May 11, 1942, and that he was excused from all obligations thereunder, and that his defense of commercial frustration had been sustained.

Plaintiffs contend: (1) that the evidence is insufficient

to support the findings that the parties intended that defendant should operate a Japanese hotel and that defendant could not operate the kind of a hotel contemplated by the parties by reason of the evacuation of the Japanese; and (2) that the doctrine of commercial frustration is not applicable and that therefore the lease was not terminated by said exclusion and evacuation orders. In our opinion these contentions must be sustained.

It is apparent from the lease, as stated by the court on the former appeal (p. 193), "that the 'desired object' of the parties was to provide 'for conducting a hotel and renting office space.' " There is no direct evidence which tends to limit or define this "desired object" as expressed in the lease. It may be that the defendant *hoped and expected* that because he was of Japanese ancestry and because his hotel was located in the Japanese community he would be able to get a large amount of Japanese patronage. In this connection it should be noted that the defendant had operated this hotel under a prior lease since some time in 1936, and that, according to the undisputed evidence, for at least several years prior to the execution of the lease here in question the proportion of the tenants who were Japanese and those who were not Japanese was substantially the same as it was during the period of this lease. It is also significant that defendant changed the name of the hotel from a Japanese name to State Hotel prior to entering into this last lease. Furthermore, the evidence is undisputed that there was non-Japanese occupancy of a substantial number of properties in the immediate vicinity of this hotel. As previously stated the hotel is located on the northeast corner of First and Los Angeles Streets. It has an entrance on each of said streets. On the west side of Los Angeles Street, both north and south of First Street, the occupancy was non-Japanese. On the east side of Los Angeles Street, north of the hotel, the occupants were non-Japanese. On the east side of Los Angeles Street, south of First Street, the predominant character of the occupancy was non-Japanese. On the north side of First Street, immediately adjacent to the hotel on the east, there was a garage operated by a non-Japanese. Defendant's hotel was thus readily accessible, geographically, to whatever non-Japanese trade these neighboring establishments brought to that vicinity. Defendant was thus in a position to get substantial non-Japanese patronage and succeeded to the extent that 25 per cent of his tenants, on the

average, were not Japanese. In the circumstances and in view of defendant's previous operation of this hotel and his percentage of non-Japanese tenants and his change of the name of the hotel from a Japanese to an American name, it may be questioned whether the evidence is sufficient to support the finding that it was the purpose or the "desired object" of even the defendant to operate a Japanese hotel. That, however, is not the crucial question. Even though it be said that the evidence is sufficient to support the finding as to the purpose or "desired object" of the defendant that alone is not sufficient to sustain the judgment in his favor. ▇ In order that the defense of frustration be applicable it is not sufficient that the purpose or "desired object" of one of the parties to the contract has been frustrated. The purpose or "desired object" of both parties must have been frustrated. On this point it is said in the Restatement of the Law of Contracts (§ 288) that: "Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis on which both parties enter into it, and this object or effect is or surely will be frustrated, a promisor who is without fault in causing the frustration, and who is harmed thereby, is discharged from the duty of performing his promise unless a contrary intention appears." ▇ Williston on Contracts (rev. ed., vol. 6, pp. 5486-87) states the rule in this language: "Even more clearly with respect to leases than in regard to ordinary contracts the applicability of the doctrine of frustration depends on the total or nearly total destruction of the purpose for which, *in the contemplation of both parties,* the transaction was entered into." (Italics added.) That clearly was not true in this case for under the facts and circumstances herein recited there is no support for a finding that the purpose or "desired object" of the plaintiffs in the execution of said lease was other than that stated therein; viz. "for conducting a hotel and renting office space." Nor is there evidentiary support for a finding that either limits or defines the stated object of the lease insofar as the plaintiffs are concerned.

▇ In order to determine the applicability of the defense of frustration to the "desired object" or purpose of the lease as therein stated some additional evidence should be recited. That evidence, which is not disputed, is that Mr. Marrs, to whom defendant sublet the hotel on May 8, 1942, took in from his operations thereof, between said date and December 31,

1942, the sum of $2,722.53. During that period he paid out $1,450.28, in operating the hotel. This included $100 per month rent paid to plaintiffs on defendant's account and $46 for depreciation. This left Marrs a balance of $1,273.25 for his less than eight months' operation of the hotel. For the first nine months of 1943 (Marrs gave his testimony in October, 1943) his gross income was $3,388.13, an average of $376.36 per month; and his expenses (including rent) $1,496, an average per month of $166.22. This left Marrs a balance of $1,892.13 for his nine months' operation of the hotel or an average of $210 per month. It appears that he did practically all the work in running it.

From these figures it is plain that the defendant has not sustained "the burden of proving that the value of the lease has been destroyed." (*Lloyd* v. *Murphy* (1944), 25 Cal.2d 48, 56 [153 P.2d 47].) In this latter case (decided since the retrial of this case), which also involved a lease, the Supreme Court has set forth in detail the principles, on which the doctrine of frustration rests. It is therefore unnecessary for us to go over that ground. It is there pointed out that "The consequences of applying the doctrine of frustration to a leasehold involving less than a total or nearly total destruction of the value of the leased premises would be undesirable." (P. 53.) It is also said therein that "No case has been cited by defendant or disclosed by research in which an appellate court has excused a lessee from performance of his duty to pay rent when the purpose of the lease has not been totally destroyed or its accomplishment rendered extremely impracticable or where it has been shown that the lease remains valuable to the lessee." (P. 54.) The principles of that case apply to and govern the instant case and require a reversal of the judgment.

Other cases involving leases which support our conclusion that the purpose of the lease was not frustrated are: *Mitchell* v. *Ceazan Tires, Ltd.* (1944), 25 Cal.2d 45 [153 P.2d 53]; *Grace* v. *Croninger* (1936), 12 Cal.App.2d 603 [55 P.2d 940]; *Davidson* v. *Goldstein* (1943), 58 Cal.App.2d Supp. 909 [136 P.2d 665]; *Burke* v. *San Francisco Breweries, Ltd.* (1913), 21 Cal.App. 198 [131 P. 83]; *Byrnes* v. *Balcom* (1942), 265 App.Div. 268 [38 N.Y.S.2d 801]; *Deibler* v. *Bernhard Bros.* (1944), 385 Ill. 610 [53 N.E.2d 450]; and *Wood* v. *Bartolino* (1944), 48 N.M. 175 [146 P.2d 883].)

The judgment is reversed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.