[Civ. No. 13722.   First Dist., Div. One.   May 11, 1948.]

C. D. DORN et al., Appellants, v. ARTHUR F. GOETZ et al., Respondents.

C. D. Dorn, in pro. per., for Appellants.

Hoffmann & Draper for Respondents.

BRAY, J.—Plaintiffs brought suit for declaratory relief, and particularly for a judgment to the effect that, by governmental regulations, they were frustrated and prevented from complying with the terms of a contract to convey to defendants certain real property, and therefore entitled, as a matter of law, to rescind such contract. The trial court rendered judgment in favor of defendants. Plaintiffs appeal.

Having purchased land upon which they proposed to construct a new home, plaintiffs decided to sell their old home, and on February 15, 1946, entered into a contract to sell it and the land upon which it stands, to defendants for the sum of $13,000. The contract was executed on the standard deposit receipt form of one of the title companies. It provided that the sum of $1,000 had been paid as a deposit and that the balance of the purchase price was to be paid as specified in the attached "addenda." There were the usual provisions that in the event of the failure of the purchaser to pay the balance as provided the seller could retain the deposit as liquidated damages; if the seller could not deliver title in 90 days the purchaser could demand his deposit back and be relieved from all obligation under the contract; and "Time is the essence of this contract." The addenda states: "Seller is about to commence erection of a new home and agrees that when said new home has reached a state of erection that will enable him to move into same, he will convey, vacate and deliver to purchase_ the above described property free and clear of all incumbrances. . . . It is anticipated that said new home will be ready for occupancy not later than July 1, 1946, but because of unforeseen building difficulties that may arise seller does not desire to fix this date exactly, accordingly seller agrees to give purchaser notice in writing 30 days in advance of the exact date that seller will vacate said described property and deliver same to purchaser. Within 30 days after receipt of such written notice purchaser agrees to pay the balance of $12,000.00."

On May 22, 1946, the President approved the Veterans' Emergency Housing Act of 1946 (ch. 268, Public Law 388,

79th Congress, (2d Sess.) 60 Stats. 207, 50 U.S.C.A.App., § 1821). Pursuant to that act, priorities in building materials were established which, in effect, so far as houses were concerned, limited construction to housing facilities for veterans. Section 1 (b) of the act, however, provided that all its provisions and regulations and orders issued under its authority should terminate December 31, 1947, or upon adoption of an earlier, concurrent resolution of Congress. On June 30, 1947, the provisions of the act upon which plaintiffs rely were repealed by section 1, title I of the Housing and Rent Act of 1947 (ch. 163, Public Law 129, 80th Congress (1st Sess.), 61 Stats. 193, 50 U.S.C.A.App., § 1881). This action was filed September 5, 1946.

Immediately after signing the contract plaintiffs engaged an architect to draw plans for their new home. The court found that plaintiffs were unable to obtain the necessary building priorities and were temporarily unable to commence the erection of the home contemplated by them because of the government regulations. It also found that "the alleged hardship of plaintiffs was foreseeable but that said plaintiffs assumed the risk and that plaintiffs did or should have contemplated a state of war and the risks arising from it; that counter-performance by defendants is possible; . . . it is untrue that plaintiffs were prevented or completely frustrated in their efforts to comply with the terms of said contract; it is untrue that by reason of said alleged frustration, said contract cannot be complied with, and the court specifically finds that counter-performance was and is possible; it is untrue that plaintiffs are entitled to have the said contract rescinded and cancelled." Defendants have excused the delay and are insisting on the performance of the contract.

Plaintiffs contend that time being made the essence of the contract, and they being prevented by government regulations from building their new home which they claim was the sole object of their making the contract, they were frustrated and entitled to rescind.

The doctrine of commercial frustration is defined in Williston on Contracts, volume 6, revised edition, page 5419, as follows: "Performance remains entirely possible, but the whole value of the performance to one of the parties at least, and the basic reason recognized as such by *both* parties, for entering into the contract has been destroyed by a supervening and unforeseen event. This does not operate

primarily as an excuse for the promisor, the performance of whose promise has lost its value, but as a failure of consideration for the promise of the other party, not in a literal sense it is true, since the performance bargained for can be given, but in substance, because the performance has lost its value. The name 'frustration' has been given to this situation.'' (Emphasis Williston's.)

█ That the basic reason for entering into the contract, which it is claimed has been destroyed by the supervening event, must be recognized by *both* parties is emphasized in the case of *Brown* v. *Oshiro,* 68 Cal.App.2d 393 [156 P.2d 976]. There the defendant tried to apply the doctrine of commercial frustration to a hotel lease in ''Little Tokio'' in Los Angeles, which defendant contended he intended to operate as a Japanese hotel only and was prevented from so doing because of the evacuation of the Japanese during the war. In reversing the lower court and holding that the doctrine did not apply the appellate court said (p. 397): ''In order that the defense of frustration be applicable it is not sufficient that the purpose or 'desired object' of one of the parties to the contract has been frustrated. The purpose or 'desired object' of both parties must have been frustrated. On this point it is said in the Restatement of the Law of Contracts (§ 288) that: 'Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis on which both parties enter into it, and this object or effect is or surely will be frustrated, a promisor who is without fault in causing the frustration, and who is harmed thereby, is discharged from the duty of performing his promise unless a contrary intention appears.' Williston on Contracts, (rev. ed., vol. 6, pp. 5486-87) states the rule in this language: 'Even more clearly with respect to leases than in regard to ordinary contracts the applicability of the doctrine of frustration depends on the total or nearly total destruction of the purpose for which, *in the contemplation of both parties,* the transaction was entered into.' (Italics added.)''

In *Lloyd* v. *Murphy,* 25 Cal.2d 48 [153 P.2d 47], a lessee who had leased certain premises on Wilshire Boulevard in the city of Beverly Hills '' 'for the sole purpose of conducting thereon the business of displaying and selling new automobiles (including the servicing and repairing thereof and of selling the petroleum products of a major oil company) and for no other purpose whatsoever without the written

consent of the lessor' except 'to make an occasional sale of a used automobile' " (p. 51), contended that the restrictions placed by the federal government on the sale of automobiles constituted a complete frustration of the objects and purposes of the lease. In holding that under the circumstances there the restrictions did not have that effect, the court, in an exhaustive compilation of California cases as well as some from other jurisdictions, clearly, concisely and definitely laid down the rules applicable in this state to the doctrine of commercial frustration. The court said: "Although the doctrine of frustration is akin to the doctrine of impossibility of performance (see Civ. Code, § 1511; 6 Cal. Jur. 435-450; 4 Cal.Jur. Ten-year Supp. 187-192; *Taylor* v. *Caldwell, supra* [3 B.&.S. 826]) since both have developed from the commercial necessity of excusing performance in cases of extreme hardship, frustration is not a form of impossibility even under the modern definition of that term, which includes not only cases of physical impossibility but also cases of extreme impracticability of performance [Citing cases]. Performance remains possible but the expected value of performance to the party seeking to be excused has been destroyed by a fortuitous event, which supervenes to cause an actual but not literal failure of consideration [Citing cases].

"The question in cases involving frustration is whether the equities of the case, considered in the light of sound public policy, require placing the risk of a disruption or complete destruction of the contract equilibrium on defendant or plaintiff under the circumstances of a given case [citing cases], and the answer depends on whether an unanticipated circumstance, the risk of which should not be fairly thrown on the promisor, has made performance vitally different from what was reasonably to be expected (6 Williston, *op. cit. supra*, § 1963, p. 5511; Restatement, Contracts, § 454). The purpose of a contract is to place the risks of performance upon the promisor, and the relation of the parties, terms of the contract, and circumstances surrounding its formation must be examined to determine whether it can be fairly inferred that the risk of the event that has supervened to caused the alleged frustration was not reasonably foreseeable. If it was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed.

". . . The courts have required a promisor seeking to excuse himself from performance of his obligations to prove that the risk of the frustrating event was not reasonably foreseeable and that the value of counterperformance is totally or nearly totally destroyed, for frustration is no defense if it was foreseeable or controllable by the promisor, or if counterperformance remains valuable. [Citing cases.]

". . . It is settled that if parties have contracted with reference to a state of war or have contemplated the risks arising from it, they may not invoke the doctrine of frustration to escape their obligations. [Citing cases.]" (Pp. 53, 54, 55.)

██ Applying the foregoing rules to the facts of this case, it appears that the desired object or effect and purpose of the contract recognized by both parties was the purchase and sale of the old home. The construction of a new home was not the object, effect, or purpose of the contract, but had to do only with the time when the conveyance and delivery of the property sold would take place. It was merely an event by which consummation of the sale was to be timed. Delay in the construction of the new home was not a frustration of the desire to be attained. ██ Both parties anticipated a delay and contracted in contemplation of it, although the precise cause of possible delay they had in mind was the shortage of labor and building materials rather than a governmental decree. Plaintiffs contend that the trial court should have taken judicial notice of the fact that "the shooting war was over, and our armed forces were being returned and discharged" and, therefore, there was no longer a war risk at the time of making the contract. However, assuming that the court should have taken notice of these facts, plaintiffs' conclusions therefrom are erroneous. As a result of the acute shortages actually contemplated by the parties, government intervention for the protection and welfare of returning veterans became necessary and we cannot, under these circumstances, say that the possibility of such regulation was not reasonably foreseeable.

In *Levy* v. *Caledonian Insurance Co.*, 156 Cal. 527 [105 P. 598], relied upon by plaintiffs, the court held that the destruction of the business district of San Francisco by the fire of 1906 did not cause a frustration of the objects of a contract to place all the insurance the promisor could sell.

In *Johnson* v. *Atkins*, 53 Cal.App.2d 430 [127 P.2d 1027], the plaintiff contracted to buy copra from defendant for

414

shipment to Colombia. After partial performance plaintiff learned that no more copra could be shipped to Colombia because the authorities there denied permission for entry. The court in applying the doctrine of commercial frustration held in effect that the desired object of the contract, namely, shipment of the copra to Colombia, formed the basis on which both parties entered into it, and that the action of the Colombia authorities was not reasonably foreseeable. Here, not only was the action of the government reasonably foreseeable, but the building of another home was one of the desired objects of one party only. In *Lloyd* v. *Murphy, supra* (p. 54), the Johnson case is given as one of the authorities for the proposition that the promisor seeking to be excused from his contract must prove that the risk of the frustrating event was not reasonably foreseeable.

The case of *20th Century Lites, Inc.* v. *Goodman,* 64 Cal. App.2d Supp. 938 [149 P.2d 88], likewise is not in point. There the plaintiff leased defendant a neon sign to be used for advertising purposes. The government dim-out regulations prohibited the lighting of such sign. It is obvious that both parties considered the desired object of the contract the use of a lighted sign. Moreover, the contract was entered into prior to the war and the fact that we would have war and that there would be dim-out regulations was not reasonably foreseeable.

The contract provided "Time is of the essence." But that clause must be read and construed in conjunction with the addenda, which states that "unforeseen building difficulties . . . may arise" and therefore the seller did not desire to fix the date of delivery definitely. Plaintiffs contend that as they could not get priorities to obtain materials to start the building, there were no "building difficulties," as this expression could only apply after building was actually commenced. That is certainly a strained construction of the language used. Delay in obtaining labor or materials whether the building has commenced or not is commonly considered "building difficulties"; and in war times and periods following, delay in obtaining materials due to governmental regulations as well as otherwise may be reasonably expected. Mrs. Dorn testified that she anticipated a shortage of both labor and building materials.

The federal regulations upon which plaintiffs base their contentions, did not apply in any way to the house which they contracted to sell. They applied only to the house

which plaintiffs contemplated building. Moreover, these regulations merely delayed the commencement of the construction of the new house for a period of approximately 13 months from the time when the house plans were finished, or a period of approximately nine months after the suit was filed, and the regulations affecting plaintiffs had been repealed at the time of the signing of the findings and judgment. This delay, including a reasonable time to complete the new home, the defendants condoned. The true consideration to plaintiffs was not the building of another house, but the payment to them of $13,000 which the government imposed delay has in no wise affected, as defendants are still ready, able and willing to pay. Thus, there has been no failure of consideration. ". . . frustration is no defense . . . if counterperformance remains valuable." (*Lloyd* v. *Murphy, supra,* p. 54.) It is possible that the alleged frustration is caused by the fact that either the value of the property sold or the cost of building the new home has increased. ▇ But "laws or other governmental acts that make performance unprofitable or more difficult or expensive do not excuse the duty to perform a contractual obligation." (*Lloyd* v. *Murphy, supra,* p. 55; *Aristocrat Highway Displays* v. *Stricklen,* 68 Cal.App.2d 788 [157 P.2d 880].)

Moreover, plaintiffs have in no way shown that they have been harmed by the delay. Plaintiff C. D. Dorn testified: "We are entire[ly] frustrated *from ever* endeavoring to fulfill that contract." (Emphasis added.) This was his conclusion, but there is no evidence upon which to base it, nor to show any reason why they should not go on and fulfill the contract. ▇ The promisor who claims a frustration must show that he is harmed thereby. (Restatement of the Law of Contracts, § 288; *Johnson* v. *Atkins, supra,* p. 434.) In their closing brief plaintiffs say: "It does not seem reasonable, fair nor just, that a party should be held to a contract of this kind for a long and indefinite length of time. Time and changing conditions affecting performance change." Yet they introduced no evidence whatever to show in what manner they have been harmed by the delay. As to the claimed hardship of having to move into the street, defendants have stated that they are willing to wait a reasonable time for plaintiffs to do what they originally contemplated—build themselves a new home.

In their reply brief plaintiffs quote *F. P. Cutting Co.* v. *Peterson,* 164 Cal. 44 [127 P. 163], on the power of the court

to reform an agreement because of mutual mistake. However, there is no evidence here of any mutual mistake of the parties.

The case does not come within the provisions of Civil Code section 1511 which provides that performance of an obligation is excused "When such performance . . . is prevented . . . by the operation of law." The purchase and sale of the old home was in no wise prevented by operation of law. The time of conveying and delivering was merely delayed. In *United States Trading Corp.* v. *Newmark G. Co.,* 56 Cal.App. 176 [205 P. 29], the court held that a temporary government embargo upon the shipment of barley which the defendant had contracted to deliver did not constitute a frustration, but required that the defendant deliver the barley as soon as the embargo ended. This case is cited with approval in *Graham etc. Corp.* v. *Mt. View D. Corp.,* 37 Cal.App.2d 315 [99 P.2d 357], where the court states that (p. 321) "where the inability to perform is merely temporary and does not affect the essence of the contract (*United States Trading Corp.* v. *Newmark Grain Co.,* 56 Cal.App. 176, 186 [205 P. 29]) ; and particularly where it causes no damage to the other party," performance must be made when the inability no longer exists.

The judgment appealed from is affirmed.

Peters, P. J., and Ward, J., concurred.