Filed 7/17/23  Fitness International v. 5900 Wilshire Owner CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| FITNESS INTERNATIONAL, LLC,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>5900 WILSHIRE OWNER, LLC,<br><br>     Defendant and Respondent. | 2d Crim. No. B323064<br>(Super. Ct. No. 20STCV45181)<br>(Los Angeles County) |

Fitness International, LLC (Fitness or Tenant) appeals the summary judgment entered on Fitness's complaint against 5900 Wilshire Owner, LLC (5900 Wilshire or Landlord) for breach of contract and other claims.  Fitness—which operates an indoor health club in commercial space it leases from 5900 Wilshire—primarily sued for the return of rent it paid during the period it was prohibited from operating the health club due to government orders enacted in response to the COVID-19 pandemic.  Fitness contends the trial court erred in analyzing its cause of action for declaratory relief, in entering judgment in favor of 5900 Wilshire

on its causes of action for breach of contract and common counts, and in denying leave to amend the complaint.  We affirm.

## FACTS AND PROCEDURAL HISTORY

Fitness operates health clubs throughout the United States and Canada.  On July 1, 1996, Fitness and 5900 Wilshire entered into a lease (the lease) giving Fitness the right to occupy the subject property for 10 years.  The parties subsequently extended the lease, which currently remains in effect until April 2027.  Pursuant to the most recent amendment to the lease executed in July 2018, "[a]t any time between January 31, 2021 and April 30, 2025, Tenant shall have the right to terminate the Lease . . . in its entirety by delivering to Landlord a written notice . . . of such election at least twelve (12) months prior to the termination date specified in Tenant's Termination Notice."

The lease identifies the permitted use for the leased property as "Health Club or any other use reasonably approved by Landlord."  Another provision of the lease states "[t]he Permitted Use is a material provision of this Lease.  Tenant shall use the Premises solely for the Permitted Use and shall not use or permit the Premises to be used for any other purpose without the prior written consent of Landlord."

In March 2020, the Governor proclaimed a state of emergency due to the COVID-19 pandemic and ordered all residents "to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19."  After state and local public health officers issued orders requiring non-essential businesses such as health clubs to close, the Governor issued an executive order to that effect.

2

In his March 16 order permitting local governments to pass protections against eviction for nonpayment of rent due to COVID-19, the Governor made clear that "[n]othing in this Order shall relieve a tenant of the obligation to pay rent, nor restrict a landlord's ability to recover rent due." (Governor's Exc. Order no. N-28-20 [Mar. 16, 2020].) Subsequently-enacted Los Angeles County ordinances and City of Los Angeles resolutions—both of which expressly excluded large companies like Fitness from the eviction moratorium—reiterated that they should not be construed as eliminating or excusing the covered tenants' obligation to pay rent.

Pursuant to these orders, Fitness temporarily ceased operating its health club on the subject premises on March 17, 2020. Fitness was allowed to reopen the health club on June 12, 2020, but was ordered to close again on July 13, 2020 and thereafter remained closed until March 15, 2021. After the March 17 closure, Fitness sought 5900 Wilshire's acknowledgment that Fitness's obligation to pay rent had been excused or abated by the closure orders. On May 5, Fitness's Senior Vice President and General Counsel notified 5900 Wilshire that "Tenant has abated and will continue to abate Rent under the Lease beginning with Rent due in April 2020 through the date that Tenant is both legally permitted to fully operate its business from the entire Premises and determines that it is safe to recommence operations and, as Tenant paid Rent for the entirety of March 2020 but was forced to cease its business operations as of March 16th due to the Government Closures, Tenant is due a Rent credit for the period from March 17th through March 31st." Fitness, however, continued to pay the

3

monthly rent and maintain possession of the leased premises notwithstanding the closure orders.

In November 2020, Fitness filed its complaint against 5900 Wilshire alleging causes of action for (1) breach of written contract, (2) common count—money had and received, (3) common count—money paid by mistake, and (4) declaratory relief. The trial court subsequently granted judgment in favor of 5900 Wilshire on the breach of contract and common count claims, and in partial favor of both parties on the claim for declaratory relief. On the breach of contract claim,[1] the court reasoned that "[Fitness] admits that its inability to operate the business was due to government-mandated closures. [Citation.] [Fitness] fails to plead facts that [5900 Wilshire] had any control over the operation of the government-mandated closures. Nor does the Complaint allege that [5900 Wilshire] prevented [Fitness] from possessing the premises during the term of the Lease . . . . In fact, [Fitness] remained in possession of the leased premises as tenant throughout the COVID-19 pandemic. [Citations.] [5900 Wilshire] did not limit [Fitness's] access to the premises or interfere with [Fitness's] use of the premises in any way."

---

[1] The claim for breach of contract alleged that "Landlord is in breach of the representations, warranties and covenants by Landlord to Tenant in the Lease, including those that provide Tenant shall have the right throughout the term of the Lease to use the Premises, or any portion thereof, and operate its business from the Premises and Tenant shall have and hold, throughout the entire term of the Lease, peaceful and quiet possession and enjoyment of the Premises." It was further alleged that "[d]espite notice of its breach of the Lease, [Landlord] has failed to cure its breach of the Lease."

4

The court granted judgment in 5900 Wilshire's favor on the cause of action for common count—money had and received because the complaint did not allege that 5900 Wilshire had received money intended to be used for Fitness's benefit. In granting judgment in 5900 Wilshire's favor on the cause of action for common count—money paid by mistake, the court noted that Fitness "does not allege any mistake as to a material fact as to its obligation to pay rent pursuant to the Lease. Indeed, the Complaint alleges that tenant believed its obligation to pay rent during the closure periods was excused and/or abated."

On the claim for declaratory relief,[2] the trial court rejected Fitness's contentions that its performance under the lease was

_____

[2] Fitness's claim for declaratory relief sought a declaratory judgment that "(a) Plaintiff has no obligation to pay Rent to Defendant during the Closure Periods; [¶] (b) Defendant is required to excuse Plaintiff's performance under the Lease during the Closure Periods by operation of California law, including without limitation, California Civil Code § 1511(1); [¶] (c) Defendant is required to excuse Plaintiff's performance under the Lease because the parties' intent and real purpose in entering the Lease is frustrated during the Closure Periods; [¶] (d) Defendant is required to excuse Plaintiff's performance under the Lease because performance was impracticable during the Closure Periods; [¶] (e) Defendant is required to excuse Plaintiff's performance under the Lease because performance was temporarily impossible during the Closure Periods; [¶] (f) Defendant is required to return to Plaintiff all monies paid by Plaintiff to Defendant during the Closure Periods; [¶] (g) Rent during the period of time Tenant is subject to the On-Going Restrictions is proportionately abated (e.g., if 50% capacity, Rent is reduced to 50%); [¶] (h) The length of the term is extended by the length of the Closure Period; [¶] (i) Plaintiff may recover its

5

excused under Civil Code section 1511(1) because Fitness's performance of its obligation to pay rent under the lease was not prevented or delayed by the operation of law. The court also found that Fitness's actual payment of rent while the closure orders were in effect fatally undermined its claim that its obligation to pay that rent was excused under the doctrines of impossibility and impracticability. The court rejected Fitness's claim that the lease was a severable installment contract on the ground that Fitness had not offered any relevant authority to support the claim.

Although the court agreed with Fitness's assertion that its obligation to pay rent while the closure orders were in effect was "suspended" under the doctrine of temporary frustration of purpose, it also found that "[b]ecause [Fitness] paid all rent due, the reinstatement of [Fitness's] rent obligation during the closure orders is moot." Contemplating the possibility of another closure order in the future, the court issued a declaratory judgment stating that "[a]bsent an agreement between the parties, [Fitness's] rent obligations under the Lease are suspended until the closure orders prohibiting business operations are lifted to permit at least partial occupancy. Once the government orders are lifted, [Fitness's] rent obligation [is] reinstated without a pro-rated reduction in rent based upon the capacity of permitted business activity."

## DISCUSSION

### *Declaratory Relief*

Fitness contends the order granting summary judgment on its claim for declaratory relief is erroneous to the extent the order

---

costs and reasonable attorneys' fees; and [¶] (j) Plaintiff may recover such other relief deemed just and reasonable."

6

does not require 5900 Wilshire to return all of the rent Fitness paid under the lease while the closure orders were in effect. We conclude otherwise.

Summary judgment is proper if no issues of triable fact appear and "the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "'"The moving party bears the burden of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish,'" the elements of his or her cause of action.'" (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017.) On appeal "[w]e independently determine whether the record supports the trial court's conclusions that the asserted claims fail as a matter of law, and we are not bound by the trial court's stated reasoning or rationales." (*County of San Diego v. Superior Court* (2015) 242 Cal.App.4th 460, 467.)

We conclude the trial court did not err in issuing a judgment that does not require the return of rents already paid by Fitness. Since Fitness actually made the payments, it cannot demonstrate that its obligation to do so was either impossible or impractical. As 5900 Wilshire aptly notes, "it is illogical for Fitness to claim that it was actually prevented from paying rent, as necessary for impossibility or impracticability to apply, where Fitness did in fact pay rent and was not prevented from doing so by the pandemic or any government orders."

The court also correctly rejected Fitness's claim that its obligation to pay rent was excused under Civil Code section 1511, which states in pertinent part that performance of a contractual obligation "is excused" where such performance is "prevented or delayed by . . . the operation of law" or "an irresistible, superhuman cause." (Civ. Code, § 1511(1) & (2).) As we have

7

noted, Fitness actually and timely performed its obligation to pay rent throughout the period in question.  In any event, Civil Code section 1511 "does not excuse Fitness's performance because the pandemic and resulting government orders did not prevent Fitness from performing its contractual obligation to pay rent. Indeed, . . . the orders explicitly stated that commercial tenants (such as Fitness) remained obligated to pay their rent despite a moratorium on commercial tenant evictions."  (*SVAP III Poway Crossings, LLC v. Fitness International, LLC* (2023) 87 Cal.App.5th 882, 894 review denied April 26, 2023, S278862 (*SVAP Poway Crossings, LLC*).)

Although the trial court found the contractual defenses of impossibility and impracticability did not apply, it was persuaded by Fitness's claim that its obligation to pay rent while the closure orders were in effect was "suspended" by the doctrine of temporary frustration of purpose.  The doctrine of commercial frustration exists where "'Performance remains entirely possible, but the whole value of the performance to one of the parties at least, and the basic reason recognized as such by *both* parties, for entering into the contract has been destroyed by a supervening and unforeseen event.'"  (*Dorn v. Goetz* (1948) 85 Cal.App.2d 407, 410 quoting Williston on Contracts, vol. 6, Rev.Ed., p. 5419).) While this appeal was pending, our colleagues in the Fourth District concluded in a similar case involving Fitness that "because the application of the doctrine of frustration under California law compels the termination of the contract, the law does not recognize the 'temporary' frustration defense Fitness attempts to assert here."  (*SVAP III Poway Crossings,* LLC, at p. 896.)  We agree.

Fitness argues both parties contemplated that the purpose of the lease was the operation of a health club. We are not convinced. The lease permitted such a use, but did not require it, and it permitted other uses subject to the landlord's approval. But even if, the primary purpose of the lease was for Fitness to operate a gym the doctrine of frustration of purpose would not aid Fitness because "Governmental acts that merely make performance unprofitable or more difficult or expensive do not suffice to excuse a contractual obligation. [Citation.]" (*SVAP III Poway Crossings*, LLC, *supra*, 87 Cal.App.5th at p. 895.)

Moreover, the remedy for commercial frustration of purpose in this context is immediate termination of the contract (*SVAP III Poway Crossings, LLC*, *supra*, 87 Cal.App.5th at p. 896), which Fitness plainly did not want.[3] It is also "clear from the parties' actions and argument that neither considered the contract to terminate as a result of the orders. On the contrary, Fitness continued to occupy the premises throughout the closure periods and did not attempt to rescind the lease. It therefore remain[ed] obligated to pay rent while in possession of the premises." (*SVAP III Poway Crossings, LLC* at p. 896.)

Finally, even assuming that California law recognizes the doctrine of *temporary* frustration of purpose, the doctrine would not apply here because the duration of the events causing the frustration (i.e., the closure orders) "'was of indefinite extent.'" (*20th Century Lites, Inc. v. Goodman* (1944) 64 Cal.App.2d Supp. 938, 945, quoting *Allanwilde Transport Corp. v. Vacuum Oil Co.* (1918) 248 U.S. 377, 386 [63 L.Ed. 312.]) Because there was no "'reliable speculation'" as to how long the closure orders would

---

[3] Not only did Fitness continue to pay rent but it never exercised its contractual right to terminate the contract.

9

continue, the alleged frustration of the purpose of the lease cannot be deemed temporary.  (*20th Century Lites* at p. 946.)

To the extent Fitness reasserts its claim that the lease should be treated as a severable installment contract, nothing in the language of the lease reflects the parties' intent that the monthly rent payments be treated as divisible from the contractual agreement that requires those payments.  "If the parties to its making intend an entire contract, not a severable one, the courts will not find it divisible despite periodic performance." (*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas. Co.* (2004) 116 Cal.App.4th 1375, 1389.)  Moreover, Fitness's claim is based on the erroneous premise that Fitness did not retain possession of the premises throughout the period in question.[4]  The trial court thus did not err in declining to order that 5900 Wilshire return the rent Fitness paid while the closure orders were in effect.[5]

---

[4] Contrary to Fitness's assertion, it did not present any evidence giving rise to a triable issue of material fact whether Fitness retained possession of the premises.  Indeed, Fitness admitted below that this fact was "undisputed" but deemed it "irrelevant."  This admission is also fatal to Fitness's claim that it was deprived of possession of the premises such that "there was a total failure of consideration during the closure period, which excused rent."

[5] Because 5900 Wilshire did not file a notice of appeal from the judgment, there is no basis for us to modify that judgment to the extent it purports to authorize Fitness to withhold rent if another closure order is issued in the future.

### *Breach Of Contract*

Fitness next contends the court erred in granting judgment in favor of 5900 Wilshire on its breach of contract claim because there is a triable issue of material fact whether 5900 Wilshire breached Fitness's contractual right to the quiet possession and enjoyment of the leased premises.  We disagree.  In making this claim, Fitness again downplays the undisputed fact (see fn. 4) that it remained in possession of the premises throughout the subject period.

In any event, Fitness's assertion that its rights to quiet possession and enjoyment of the premises were violated fails as a matter of law because the covenant of quiet possession and enjoyment "'insulates the tenant against any act or omission on the part of *the landlord, or anyone claiming under him*, which interferes with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy.'" (*Andrews v. Mobile Aire Estates* (2005) 125 Cal.App.4th 578, 588, italics added.)  "To be actionable, *the landlord's* act or omission must substantially interfere with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy.  [Citations.]" (*Id.*, at p. 589, italics added.)  Fitness refers to section 17.2 of the lease, but that section merely provides that 5900 Wilshire shall indemnify Fitness against losses arising from the "'*[l]andlord's* breach or non-performance of any provision of this Lease.'" (Italics added.)  Fitness fares no better in highlighting sections 19.1, 20.1 and 20.2 of the Lease, which provide that a government "'[t]aking'" is among the type of "'[i]nterruptions'" that may entitle the tenant to an abatement of rent.  Simply put, there was no government taking here.  Because no act or omission by 5900 Wilshire interfered with Fitness's possession and enjoyment of

11

the leased premises and there is no other basis in the record to support a finding that 5900 Wilshire failed to comply with any of its obligations under the lease, summary judgment was properly entered in 5900 Wilshire's favor on the claim for breach of contract.

### *Common Counts*

Fitness also claims the court erred in granting judgment in favor of 5900 Wilshire on the common count claims. We are not persuaded.

To establish its common claim based on money had and received, Fitness had to prove that 5900 Wilshire received money "'intended to be used for the benefit of [the plaintiff],' that the money was not used for [Fitness's] benefit, and that [5900 Wilshire] has not given the money to [Fitness]." (*Avidor v. Sutter's Place, Inc.* (2013) 212 Cal.App.4th 1439, 1454, quoting CACI No. 370.) As the trial court correctly found, this claim "fails on the pleadings" because Fitness did not allege these requisite facts, much less offer any evidence to give rise to an issue of material fact sufficient to preclude summary judgment.

Fitness's common count claim based on money paid by mistake also fails on the pleadings because there is no allegation that Fitness paid the rent by mistake. As 5900 Wilshire notes, "Fitness has claimed from the outset that it was excused from paying rent to Landlord, but paid it anyway." Accordingly, 5900 Wilshire was properly granted summary judgment on both common count claims.

### *Denial Of Leave To Amend Complaint*

Fitness finally contends the court abused its discretion in denying leave to amend the complaint after ruling that the

12

breach of contract and common count claims failed on the pleadings.  We disagree.

"Where a motion for summary judgment is in effect a motion for judgment on the pleadings, the court may grant a plaintiff leave to amend the complaint."  (*Stoltz v. Wong Communications Limited Partnership* (1994) 25 Cal.App.4th 1811, 1817.)  Although the denial of leave to amend under these circumstances constitutes an abuse of discretion if the pleading does not show on its face that it is incapable of amendment, "[t]he plaintiff has the burden of showing what amendment can be made, and how it will change the legal effect of the pleading, so that it states a cause of action."  (*Ventura Coastal, LLC v. Occupational Safety & Health Appeals Bd.* (2020) 58 Cal.App.5th 1, 33.)  Because Fitness makes no such showing, its claim fails.  (*Ibid*. ["A plaintiff can even make this showing for the first time on appeal"].)

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P.J.          BALTODANO, J.

13

Christopher K. Lui, Judge
Superior Court County of Los Angeles

_____

Dorsey & Whitney, Bryan M. McGarry, Lynnda A. McGlinn, Jill A. Gutierrez, for Plaintiff and Appellant.

Allen Matkins Leck Gamble Mallory & Natsis, Charles D. Jarrell, Suzanne E. Kenney, Kent W. Toland, for Defendant and Respondent.